**Julie DUNCAN, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**NORTHWEST AIRLINES, INC., Defendant–Appellee.**

No. 98–35617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1999

Filed April 6, 2000

Steve W. Berman, Hagens & Berman, Seattle, Washington, for the plaintiff-appellant.

Thomas Tinkham, Dorsey & Whitney, Minneapolis, Minnesota, for the defendant-appellee.

Before: REAVLEY,[1] REINHARDT, and McKEOWN, Circuit Judges.

REINHARDT, Circuit Judge:

In this case, we must determine whether a class-action tort suit brought against Northwest Airlines by some of its flight attendants is preempted by the Airline Deregulation Act. We hold that it is not.

## I. BACKGROUND

Julie Duncan, as the named plaintiff, filed a class-action, personal-injury lawsuit against Northwest Airlines in Washington state court. Brought on behalf of nonsmoking flight attendants who served as crew members on Northwest's smoking flights to and from Asia, the suit raises a claim based on Northwest's smoking policy. At the time the action was filed, Northwest prohibited smoking on all domestic and most international flights, but permitted smoking on most flights to and from Asia.[2] In her complaint, Duncan argued that, by permitting smoking on most trans-Pacific flights, Northwest breached its duty under state law to provide a safe and healthy work environment for its employees. She further alleged that Northwest's decision to allow smoking on these flights injured the flight attendants by exposing them to secondhand smoke. The complaint sought damages, an injunction, and medical monitoring.[3]

Northwest removed the suit to federal court and filed a motion to dismiss, asserting that Duncan's action was preempted by § 1305(a)(1) the Airline Deregulation Act (ADA). The district court granted Northwest's motion and dismissed the case. Duncan appealed. After the appeal was filed, Northwest banned smoking on all trans-Pacific flights.

## II. DISCUSSION

On appeal, we must determine whether Duncan's tort suit is preempted by § 1305(a)(1) of the ADA. Section 1305(a)(1) provides:

[N]o state or political subdivision thereof and no interstate agency or other political agency of two or more states shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to the*

1. The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

2. Prior to 1988, nearly every airline permitted smoking on both domestic and international flights. Smoking policies began to change in 1988, when a federal statute banned smoking on some domestic flights. Since then, a combination of statutory prohibitions, internation-al agreements, and voluntary efforts by airlines have made nonsmoking domestic and international flights the rule rather than the exception.

3. Both Duncan and Northwest agree that Duncan abandoned her claim for injunctive relief before the district court. In any event, her request for injunctive relief would now be moot, given that Northwest no longer permits smoking on its trans-Pacific flights.

*rates, routes or service* of any air carrier.... [4]

49 U.S.C. app. § 1305(a)(1) (emphasis added). The scope of preemption under this provision depends on the interpretation of the phrase "relating to the rates, routes or service." [5] When the district court dismissed Duncan's suit, the meaning of this phrase—and hence the scope of preemption under section 1305(a)(1)—was uncertain both in this circuit and others.

While Duncan's appeal was pending, we substantially clarified the scope of § 1305(a)(1) preemption in *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir.1998) (en banc). [6] In that case, we provided a definitive interpretation of the term "service": we concluded that "Congress used the word 'service' in the phrase 'rates, routes, or service' in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." [7] *Id.* at 1261. This interpretation was mandated by the purpose and language of the preemption provision. First, we determined that "in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry. Congress did not intend to preempt passengers' run-of-the-mill personal injury claims." [8] *Id.* Accordingly, we interpreted the term "service" narrowly in order to prevent the "preemption of virtually everything an airline does." *Id.* at 1266. Second, our interpretation of the term "service" was guided by the context in which the term was used:

> Airlines' "rates" and "routes" generally refer to the point-to-point transport of passengers. "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided....
>
> ....
>
> [Thus,] [l]ike "rates" and "routes," Congress used "service" in § 1305(a)(1) in

---

4. In 1994, section 1305(a)(1) of the ADA was amended and incorporated into the Federal Aviation Administration Authorization Act of 1994. *See* 49 U.S.C. § 41713(b)(1). As amended, the provision reads in relevant part: "[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." Because the minor amendments are nonsubstantive, for convenience we will continue to refer to the provision as § 1305(a)(1) of the ADA.

5. Obviously, an action is preempted only if it also satisfies the other requirements of § 1305(a)(1). For purposes of the present appeal, we assume that a court ruling that granted relief in Duncan's suit would constitute the enforcement by Washington of "a law, regulation, or other provision having the force and effect of law." 49 U.S.C. app. § 1305(a)(1).

6. For a detailed description of the evolution of ADA preemption doctrine in this circuit, see *Charas*, 160 F.3d at 1262–63.

7. We also expressly overruled our earlier decisions in *Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir.1995), and *Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir.1997), to the extent that those decisions were inconsistent with our new decision.

8. One might argue that, because the quoted passage mentions only *passengers'* personal injury claims, *Charas* is inapplicable to personal injury claims brought by others, such as flight attendants. However, we stated that *passengers'* claims were not preempted because the claims before us were all filed by passengers. The logic of *Charas* does not support a distinction between passenger plaintiffs and other plaintiffs. The opinion turns on the effect of a lawsuit on certain aspects of the defendant airlines' business, not on the role of the plaintiff who brought the lawsuit. Moreover, any such argument is rebutted by the fact that, in its conclusion, *Charas* holds that "[Congress] did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct." 160 F.3d at 1266. Nothing in this statement suggests that we intended the holding in *Charas* to be limited to suits brought by passengers.

the public utility sense—i.e., [to refer to] the provision of air transportation to and from various markets at various times. *Id.* at 1265–66. We concluded that, "[i]n the context in which it was used in the Act, 'service' was not intended to include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." *Id.* at 1261.

Given our holding in *Charas,* it is clear that allowing smoking on Northwest's trans-Pacific flights does not constitute a "service." An airline's decision to permit (or not to permit) smoking on a flight is not a decision dealing with "the frequency and scheduling of transportation, [or] the selection of markets to or from which transportation is provided." *Charas,* 160 F.3d at 1265–66. Rather, like the decision to offer in-flight beverages, a rule permitting or prohibiting smoking deals with what we termed, for want of a better word, "amenities."

Northwest contends that, even if permitting smoking does not itself constitute a service, Duncan's action is still preempted by § 1305(a)(1) because it "relates to" a "service." The airline's argument proceeds in two parts. First, it contends that the result of permitting Duncan's lawsuit to proceed might be to force Northwest to prohibit smoking on any trans-Pacific flights that originate in Washington State. It argues that this forced prohibition, in turn, might compel Northwest, for economic reasons, to drop its trans-Pacific departures from Washington and reroute its other trans-Pacific flights around the state. The airline argues that this causal relationship between Duncan's tort suit and its provision of "services" renders her claim "related to" a "service."

Northwest's argument about the causal connection between its smoking policy and its ability to profit on the trans-Pacific routes is unpersuasive. As noted above, Northwest stopped allowing smoking on its trans-Pacific flights while Duncan's appeal was pending. In spite of its smoking pro-

hibition, Northwest has not canceled its trans-Pacific flights. Thus, the airline's own business decision demonstrates conclusively that, even if Duncan's suit had forced it to prohibit smoking on flights originating in Washington (and perhaps it did), the airline would not have had to cancel its Washington-based trans-Pacific departures and reroute its other flights.

Moreover, the type of causal relationship to a "service" alleged by Northwest is not sufficient to invoke preemption under § 1305(a)(1). If it were, then, contrary to *Charas,* almost all personal injury claims would be preempted. This is because all successful tort suits—and certainly all successful class-action tort suits— invariably carry with them an economic cost for the defendant airline. Such cases may even, in some instances, cause the airline to decide to make changes in its operations. *Charas* makes clear, however, that the imposition of liability as a result of a personal injury action does not sufficiently interfere with the objectives of airline deregulation to warrant preemption of the action—in other words, the connection between an award in a tort case and an airline's "services" is simply too tenuous. *See* 160 F.3d at 1261, 1266; *see also Newman v. American Airlines,* 176 F.3d 1128, 1131 (9th Cir.1999). *Cf. Morales v. Trans World Airlines,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (holding that state actions are not preempted if they affect rates, routes, or services "in too tenuous, remote, or peripheral a manner" (internal quotation omitted)).

Finally, Northwest argues that *Read– Rite Corp. v. Burlington Air Express,* 186 F.3d 1190 (9th Cir.1999), somehow compels a different result. *Read–Rite,* however, provides no support for Northwest's position. *Read–Rite* concerned the law governing the loss of or damage to goods transported by interstate common carriers. In that case, we held that "state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the ADA." *Id.* at 1197. The crux of our holding was that claims arising from dam-

age by common carriers had been governed by a purely federal regime for nearly the entire century. We described that regime as follows: "federal regulation by statute, federal preemption of state regulation, and regulation by federal common law of matters not covered by federal statute." *Id.* at 1196. Unlike personal injury claims, which *state tort law* has traditionally governed, *federal law* governed the claims at issue in *Read–Rite* prior to the enactment of the ADA. Consequently, *Read–Rite*'s finding of preemption after the ADA's enactment simply maintained the regulatory status quo ante. Because it did not address the question of when preemption within a field that the states have traditionally occupied is appropriate—the question at issue in both *Charas* and the present case—*Read–Rite* is of no relevance here.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's conclusion that Duncan's suit is preempted by § 1305(a)(1) of the ADA, hold that the provision does not preempt Duncan's action, and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.