**Mansour FADAIE, et al., Plaintiffs,**

v.

**ALASKA AIRLINES, INC., et al., Defendants.**

**No. C03–2421L.**

United States District Court, W.D. Washington.

Nov. 24, 2003.

John P. Sheridan, Sheridan & Baker, Randy Perry Baker, Sheridan & Baker, Seattle, WA, for Mansour Fadaie, Lisa Gould–Fadaie, a marital community, Plaintiffs.

Kevin C. Baumgardner, Corr Cronin, Seattle, WA, for Alaska Airlines Inc, an Alaska corporation, Alaska Air Group Inc., a Delaware Corp., Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

LASNIK, District Judge.

■ This matter comes before the Court on "Defendants' F.R.C.P. 12(b)(6) Motion to Dismiss Plaintiffs' Claims." Defendants argue that all of plaintiffs' claims should be dismissed because they are (1) preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713, (2) preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, (3) barred by the doctrines of *res judicata* and collateral estoppel, (4) precluded by plaintiffs' failure to exhaust administrative remedies, and/or (5) barred by the statute of limitations. In the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996). The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted. *United States v. Ritchie,* 342 F.3d 903, 908–09 (9th Cir.2003). Where consideration of additional documents is appropriate, the allegations of the complaint and the contents of the documents are accepted as true and construed in the light most favorable to plaintiff. *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 925–26 (9th Cir.1996); *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir.2000). Only those claims for which it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief should be dismissed. *Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998).

■ Defendants have placed before the Court two documents that were not attached to plaintiffs' complaint. Having reviewed the documents and considered the arguments of counsel, it is clear that plaintiffs are relying on the administrative complaint filed with the Department of Labor—Occupational Safety and Health Administration ("OSHA") to establish protected activity related to Mr. Fadaie's termination. Plaintiffs also rely on the Secretary's factual findings to prove that his earlier activities were protected and that defendants had no justification for certain adverse employment actions. In these circumstances, the two OSHA documents form the basis of at least some of plaintiffs' claims and can be considered when determining whether it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief. In the alternative, the Court could take judicial notice of public records, including the "records and reports of administrative bodies" such as OSHA. *Ritchie,* 342 F.3d at 909 (quoting *Interstate Nat. Gas. Co. v.*

*S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953)). Administrative complaints and agency decisions are the type of public records that are properly the subject of judicial notice.[1]

## I. PREEMPTION

Defendants argue that all of plaintiffs' claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, or the Railway Labor Act, 45 U.S.C. § 151 *et seq.*

### A. Airline Deregulation Act ("ADA")

■ Although section 1305(a)(1) of the ADA was amended when it was incorporated into the Federal Aviation Administration Authorization Act of 1994, the prohibition against state regulation of the airline industry has remained virtually unchanged: no state may enact or enforce any law, regulation, or provision related to a price, route, or service of an air carrier. 49 U.S.C. § 41713(b). The Ninth Circuit has found that the term "service," which is arguably the broadest of the three prohibited topics under the ADA, encompasses "such things as the frequency and scheduling of transportation and . . . the selection of markets to or from which transportation is provided . . . ." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265–66 (9th Cir. 1998). It does not, contrary to defendants' argument, cover all airline operations. "[I]n enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition in the airline industry." *Charas*, 160 F.3d at 1261. The relevant inquiry is whether a particular claim will have an effect on certain aspects of an airline's business, namely pricing, routes, and services. *Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, 1114 n. 8 (9th Cir.2000).

■ Claims based on state laws of general applicability will be preempted if the law expressly refers to airline prices, routes, or services, or has a "forbidden significant effect" on those aspects of the business. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Determining when the effect of a state law claim rises to a "significant" level is difficult. As a general matter, the Ninth Circuit has concluded that, notwithstanding the fact that a state's enforcement of anti-discrimination statutes or negligence claims could influence a carrier's decision to operate in a particular market or to alter operations in an attempt to avoid liability, such a tenuous causal relationship between the state law and the effect on price, routes, and service does not trigger preemption. *See Duncan*, 208 F.3d at 1115; *Newman v. American Airlines, Inc.*, 176 F.3d 1128, 1131 (9th Cir.1999); *Aloha Islandair Inc. v. Tseu*, 128 F.3d 1301, 1303 (9th Cir.1997). The *Duncan* analysis clearly applies to plaintiffs' discrimination, negligence, and outrage claims: any effect the prosecution of such claims may have on defendants' business decisions is too indirect to con-

---

1. Even if the Court were to treat defendants' motion as one for summary judgment under Fed.R.Civ.P. 56, plaintiffs had a full and fair opportunity to respond to the evidence submitted by defendants. Plaintiffs have not argued that the OSHA documents lack authenticity or otherwise misstate the nature of the administrative complaint and determination. Rather, plaintiffs request a continuance while they proceed with discovery. At no point do plaintiffs attempt to identify what factual issues need to be resolved, to set forth the type of discovery that is necessary, or to explain how such discovery would be relevant to the legal issues of preemption, *res judicata*, and exhaustion. Having failed to present reasons why they should be excused from timely responding to defendants' motion, plaintiffs are not entitled to relief under Fed.R.Civ.P. 56(f).

clude that the underlying state laws are "related to" price, route, or service. Plaintiffs' discrimination, negligence, and outrage claims are not preempted.

■ Whether a wrongful discharge claim based on allegations that the airline retaliated against whistleblowers falls within the preemption of § 41713(b) has not been determined by the Ninth Circuit. Other courts of appeal have split on the issue. *See Botz v. Omni Air Int'l,* 286 F.3d 488 (8th Cir.2002) (claim based on Minnesota whistleblower statute preempted because a state law authorizing an employee to refuse an assignment that she believed violated the Federal Aviation Regulations could have a direct and adverse effect on the airline's ability to provide scheduled services); *Branche v. Airtran Airways, Inc.,* 342 F.3d 1248 (11th Cir.2003) (claim based on Florida whistleblower statute not preempted because retaliation claims, like discrimination claims, do not affect or implicate a service regarding which airlines compete for business). Given the fact that the Ninth Circuit has defined "services," as used in § 41713(b)(1), more narrowly than either the Eighth or the Eleventh Circuit, it would likely conclude that an employee's whistleblower claim is not preempted because such claims have very little, if anything, to do with the "frequency and scheduling of transportation [or] the selection of markets to or from which transportation is provided ...." *Charas,* 160 F.3d at 1265–66. As more fully discussed in *Branche,* "at its root, this case involves a simple employment discrimination claim, with the prohibited basis for termination being not any inherent characteristic of the employee such as race, gender or disability, but rather his undertaking of protected activity." 342 F.3d at 1259.

The Eighth Circuit found preemption based in large part on its concern that an employee's refusal to take an assignment, conduct a repair, or release a plane might prevent the airline from providing scheduled flights, thereby impacting its "services." This concern improperly conflates the employee's on-the-job decisions and activities with the state law retaliation claim. An employee's decision to refuse an assignment or ground a plane is a judgment call made in light of the surrounding circumstances and in the course of carrying out the duties for which he or she is employed. State law whistleblower and wrongful discharge claims do not compel the employee to act in one way or another: whether a plane should be grounded is determined based on federal regulations and the employee's interpretation thereof. The underlying activity (such as refusing to perform a particular task because of safety concerns) does not give rise to a whistleblower claim unless and until the airline retaliates against the employee for reporting the perceived safety violation. While the Eighth Circuit correctly notes that employee decisions have the capacity to adversely affect an airline's operations, as long as those decisions are based on federal, rather than state, requirements, the preemption issue does not arise.

Under the above analysis, if an employee filed suit in an attempt to enforce a state requirement regarding the length of a shift, the suitability of a replacement part and its paperwork, or the method by which equipment should be tested, the claim would be dismissed as preempted: the ADA precludes state regulation of such operational issues. That is not the case here, however. Plaintiffs' claims are based on retaliation that occurred after, and is logically separate from, the on-the-job conduct that caused, or had the capacity to cause, an operational delay. The subsequent retaliation that is prohibited by state law does not impact prices, routes, or services and does not trigger preemption under § 14713.

Relying on the analysis in *Botz*, defendants also argue that the 1999 amendment of the ADA, which added a federal Whistleblower Protection Program ("WPP") to the Act, shows that Congress intended to preempt state claims of retaliation for raising safety concerns. 49 U.S.C. § 42121. Filing a complaint under the WPP is not mandatory, however: the relevant provision simply states that "a person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) *may* ... file ... a complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C. § 42121(b)(1) (emphasis added). There is no reference to preemption and no indication that the WPP changed the scope of § 41713: "[i]t simply added an additional remedy for plaintiffs seeking to advance a retaliatory discharge claim." *Branche*, 342 F.3d at 1264. The Court's conclusion that plaintiffs' retaliatory discharge claim is not "related to" price, routes, or service is unaffected by the existence of the WPP.

## B. Railway Labor Act ("RLA")

■ Defendants argue, and plaintiffs concede, that any claims arising out of the resolution of the grievance that removed plaintiff from the union workforce are "inextricably intertwined with the grievance machinery of the collective bargaining agreement" and are preempted by the RLA. *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 843–44 (9th Cir.1989); 45 U.S.C. § 151 *et seq.* It is not clear, however, whether any of plaintiffs' claims are based on the outcome of the grievance: the allegations in the complaint regarding the grievance appear to have been included as background information to explain how plaintiff could have been terminated from a supervisory position despite his demotion. Nor have defendants shown that plaintiffs' claims of retaliation arising out of reports of safety violations made

during Mr. Fadaie's stint as a union employee would be preempted under the RLA. To the extent plaintiffs' retaliation/discrimination claims are based on rights that exist independent of the collective bargaining agreement, they may not be preempted by this statute. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 264–65, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

## II. RES JUDICATA

■ Plaintiffs' claims that Mr. Fadaie was "blacklisted" by management, rejected for the position of "Manager, Tool Control," and demoted to a non-supervisory position for blowing the whistle on various unsafe practices at Alaska Airlines are barred by *res judicata*. The doctrine of *res judicata* is designed to give finality to judicial determinations and to preclude a party from relitigating an issue that has already been resolved. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001). *Res judicata* bars "all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties (or their privies) on the same cause of action, if the prior suit concluded in a final judgment on the merits rendered by a court of competent jurisdiction." *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 (9th Cir.1980). The doctrine applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens*, 244 F.3d at 713.

■ Successive lawsuits are barred if they involve "an identity of claims," meaning a single cause of action which was or should have been placed before the judiciary as a unified whole. In determining whether successive suits involve a single cause of action, the Court considers:

(1) whether rights or interests established in the prior judgment would be

destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980). The last of these criteria is the most important. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982) (footnote omitted). Having compared the allegations made by plaintiff in his 2002 OSHA complaint with the allegations made here, and after considering the factors set forth in *Costantini*, it is clear that a significant portion of plaintiffs' retaliation claim was already considered and determined by the administrative agency. For the most part, plaintiffs' state whistleblower claim rests on allegations that were presented to OSHA or which arose from the same transactional nucleus of facts and should have been presented in the earlier complaint. Plaintiffs allege that Mr. Fadaie was threatened, treated unfavorably, denied a promotion, placed on probation, issued a corrective action letter, and/or demoted because he reported that the tool conformity inspections were incomplete, supported other employees when they questioned defendants' stance on the tool conformity issue, complained that unqualified individuals were being placed in supervisory positions, reported that flight data recorders were not being serviced and read properly, quarantined a wingtip and prevented its installation because of incorrect paperwork, and reported that the engineering department was not processing manufacturer Service Bulletins correctly. All of these activities and events either were or should have been included in Mr. Fadaie's OSHA complaint.

▪ That having been said, however, it is equally clear that Mr. Fadaie could not have raised a retaliation claim regarding his termination because it had not yet occurred when the agency considered his other claims. Nor is the lack of administrative claims regarding racial or religious discrimination, outrage, and negligence a bar in this litigation. Defendants argue that plaintiffs' discrimination claims should have been presented to the Secretary of Labor for consideration because they arose out of the same transactional nucleus of facts as the retaliation claims. The Court finds, however, that the facts giving rise to each claim vary and that consideration of the other three elements of the *Constantini* analysis leads to the conclusion that *res judicata* does not apply to the non-whistleblower claims. Plaintiffs have identified multiple motives for the adverse employment actions discussed in the complaint and each alleged motive is supported by separate factual allegations regarding different events. For example, plaintiffs allege that Mr. Fadaie opposed race discrimination in 1999 and was thereafter subjected to threats of reprisal, intimidation, and the denial of a promotion. The Washington Law Against Discrimination claim arising from these events has nothing to do with the tool conformity issue, has its own separate elements and burdens of proof, and will require the presentation of evidence that was not relevant in the administrative proceeding. Plaintiffs' discrimination claims are not merely an "added gloss" to the retaliation claims: they seek to vindicate rights that are independent of the whistleblower claims and are based on different factual allegations. In addition, defendants have not shown that the Secretary of Labor would have had the authority to grant relief on plaintiffs' non-whistleblower claims. The WPP provides an avenue of relief for whistleblowers. Neither the statute nor the case law indicate that the Regional Administrator could have considered state law causes of action arising

during the same time period, regardless of whether they were "related" to the whistleblower claims or based on independent factual averments. In such circumstances, it is impossible to conclude that Mr. Fadaie could have or should have raised his discrimination, outrage, negligence, and termination-related retaliation claims in the earlier proceeding.

Plaintiffs argue that *res judicata* is inappropriate as to any of the claims asserted in this litigation because the procedures used by the Regional Administrator did not afford Mr. Fadaie a full and fair opportunity to present his claims.[2] Pursuant to the Restatement (Second) of Judgments § 83:

> An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including ... [t]he right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties .... [3]

Plaintiff argues that the Regional Administrator's decision was based on an investigation, rather than an adjudicative proceeding, and that he was never given an opportunity to contradict evidence presented by the employer. To the contrary, the procedures governing Mr. Fadaie's whistleblower complaint afford ample opportunity to fully present his claims, including avenues of appeal that provided direct and apparently unique access to the federal appellate courts. As stated in the decision letter issued on March 7, 2003, the statute under which plaintiff filed his administrative complaint provides for an agency determination, followed by a formal hearing on the merits before an Administrative Law Judge ("ALJ"). 49 U.S.C. § 42121(b)(2)(A). The proceedings before the ALJ are adversarial in nature and involve taking evidence, hearing testimony, and considering the arguments of the parties. The Secretary of Labor then makes his or her final decision based on the ALJ's recommendation and can choose from a full range of remedies when providing relief to the complainant.[4] Any party aggrieved by the Secretary's decision can take a direct appeal to the Ninth Circuit. 49 U.S.C. § 42121(b)(4)(A).

For whatever reason, Mr. Fadaie opted not to request a hearing before an Administrative Law Judge. After receiving the Regional Administrator's decision letter,

---

**2.** In their opposition papers, plaintiffs also argued that *res judicata* was inappropriate because the pleadings do not rule out the possibility that Mr. Fadaie appealed OSHA's adverse decision. Whatever doubt there was regarding the finality of the administrative ruling was resolved at oral argument: Mr. Fadaie acknowledged that he did not request a hearing before an Administrative Law Judge.

**3.** Because this is a diversity action, Washington law controls whether the agency action has a preclusive effect on plaintiffs' claims. *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir.2002). In determining whether procedures afforded by an agency are sufficient, the Washington Supreme Court has adopted the analysis set forth in the Restatement. *Shoemaker v. City of Bremerton*, 109 Wash.2d 504, 508–09, 745 P.2d 858 (1987)

**4.** Pursuant to 49 U.S.C. § 42121(b)(3)(B), the Secretary may order an employer to "(i) take affirmative action to abate the violation; (ii) reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment; ... (iii) provide compensatory damages to the complainant[;]" and (iv) pay "a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred."

he decided not to follow through on the procedures set forth in the letter, thereby waiving his right to an adversarial hearing. Contrary to plaintiffs' argument, the WPP provides complainants with an opportunity to fully and fairly litigate their claims: plaintiffs cannot now argue that the procedures utilized by the agency were insufficient when it was Mr. Fadaie's choice to forego the admittedly sufficient procedures to which he was entitled.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ As stated above, an employee who believes he has been discriminated against for raising safety concerns has the option of filing a complaint with OSHA under the WPP. The WPP procedures are not mandatory, however, and merely afford "an additional remedy for plaintiffs seeking to advance a retaliatory discharge claim." *Branche*, 342 F.3d at 1264; 49 U.S.C. § 42121(b)(1) (aggrieved employees "may" file a complaint with the Secretary of Labor). Mr. Fadaie could have elected to forego his administrative options and file his whistleblower claims directly in a court of law. However, this choice of remedies ended once plaintiff initiated the administrative complaint process and obtained a final decision from the Secretary of Labor. At that point, the statute obligated him to complete the administrative process, such that the only avenues of relief available to him were a hearing before the ALJ and a direct appeal to the Ninth Circuit. He cannot, as he has done here, collaterally attack an adverse ruling from the Secretary by filing a new civil action in district court. *See* 49 U.S.C. § 42121(b)(4)(B) ("An order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding."). Thus, plaintiffs' pre-termination whistleblower claims are barred under the statutory scheme that was triggered by the filing of his OSHA complaint.

### IV. STATUTE OF LIMITATIONS

The parties agree that plaintiffs' claims are subject to a three year statute of limitations. All of the adverse employment actions of which plaintiffs complain, starting with the award of the Manager of Tool Control position to a "substantially less qualified Christian native born-American," occurred within the three-year window.

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs assertions that Mr. Fadaie was threatened, treated unfavorably, denied a promotion, placed on probation, issued a corrective action letter, and/or demoted because he reported safety-related issues to his employer and the Federal Aviation Administration are barred by the doctrine of *res judicata* and the limitations imposed by 49 U.S.C. § 42121(b)(4)(B). Plaintiffs may proceed with their discrimination, outrage, negligence, and termination-related retaliation claims.