**Andrew KO**

**v.**

**EVA AIRWAYS CORPORATION, et al.**

**No. CV 11–5995–GW(MRWx).**

United States District Court, C.D. California.

Signed Feb. 23, 2012.

Brian Gordon Beecher, for Plaintiffs.

Kevin R. Sutherland, for Defendants.

**PROCEEDINGS: DEFENDANT EVA AIRWAYS CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS (filed 01/26/12)**

**DEFENDANT EVA AIRWAYS CORPORATION'S MOTION TO AMEND COURT'S SCHEDULING ORDER OF SEPTEMBER 19, 2011 (filed 02/13/12)**

GEORGE H. WU, District Judge.

Javier Gonzalez Deputy Clerk

Pat Cuneo Court Reporter / Recorder

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the motions are **TAKEN UNDER SUBMISSION.** A non-appearance status

conference is set for March 1, 2012. Court to issue ruling.

The post mediation status conference set for March 1, 2012 is **taken off-calendar.**

Tentative Rulings on: (1) Motion for Judgment on the Pleadings, and (2) Motion to Amend Court's Scheduling Order Dated September 19, 2011

## I. Background

■ Plaintiff Andrew Ko ("Plaintiff") brings this action—removed to this Court based upon both diversity and federal question jurisdiction[1]—against Eva Airways Corporation ("EVA"), for negligence, negligent infliction of emotional distress, and interference with custodial relations with a minor child. Plaintiff was formerly married to Yu Xin Wang and fathered twin boys C and W with her. *See* Complaint ¶¶ 3, 19. Plaintiff and Wang separated in 2008 and were granted joint custody by a California court. *See id.* ¶¶ 19–20. On August 30, 2009, Wang picked the children up for a piano lesson, but instead took them to the Republic of Singapore on one of EVA's planes. *See id.* ¶¶ 23–25. Wang was charged with felony kidnapping and Plaintiff regained custody of the children on March 15, 2011, following a custody ruling in his favor. *See id.* ¶¶ 35, 40–42. Plaintiff incurred significant expense to recover custody of his children, was not able to see them regularly for a year and a half, and was insulted verbally by his children when he did recover them. *See id.* ¶¶ 23, 42–43.

Plaintiff alleges that EVA violated industry best practices which would have prevented this abduction. Specifically, the complaint alleges that when a child is travelling to a foreign country, especially a country such as Singapore which is not a signatory to the Hague Convention of the Civil Aspects of International Child Abduction and has been identified by the State Department as a frequent destination for child abductions, most airlines require proof of custody from the travelling parent or a letter of consent from the parent who is not present. *See id.* ¶¶ 11–14. Plaintiff also alleges that EVA failed to collect I–94 Departure Cards from C and W but entered information in the federal IBIS Advance Passenger Information System indicating that it had. *See id.* ¶¶ 30, 32.

EVA now moves for judgment on the pleadings, arguing both that Plaintiff cannot satisfy the elements for any of the three claims he advances and that all of Plaintiff's claims are preempted by the Airline Deregulation Act. It also moves to amend the scheduling order in place in this action.

## II. Analysis

### A. Rule 12(c)

■ Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed ... but early enough not to delay trial." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). Because a motion for judgment on

---

**1.** For reasons that it need not address just yet, there may be good reasons why this Court would not have federal question jurisdiction. EVA asserts diversity jurisdiction, but alleges only that Plaintiff is a *resident* of California. *Residence,* alone, does not equate to *citizenship* for diversity purposes. *See Kanter v.* *Warner–Lambert Co.,* 265 F.3d 853, 857–58 (9th Cir.2001). Before proceeding to the merits of this motion, the Court would first confirm with Plaintiff whether he challenges the existence of diversity jurisdiction over this matter.

the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.), *cert. denied*, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n. 1 (9th Cir.2008).

 Under Rule 12(b)(6), a court is to (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir.2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.2009). In its consideration of the motion, the court is limited to the allegations on the face of the Complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir.2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## B. Preemption

The Court need not reach the question of whether Plaintiff's claims are sufficiently pled,[2] because it would appear that they

---

2. If the Court were to reach the issue, it finds the analysis set forth in the Second Circuit's decision in *Pittman by Pittman v. Grayson*, 149 F.3d 111, 124–25 (2d Cir.1998), persuasive on the question of whether EVA had any duty of care to Plaintiff. Although that decision was rendered under New York law, and this Court would have to consider the factors set forth in *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), its conclusion would be the same. Indeed, as the parties' discussion demonstrates, a recent unreported California appellate decision followed *Pittman* on this point in another case bearing very similar facts. *See Braden v. All Nippon Airways Co., Ltd.*, No. B215440, 2010 WL 3993215, *3–5, 2010 Cal.App. Unpub. LEXIS 8102, *8–14 (Cal.App. Oct. 13, 2010);

*see also Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir.2003) ("Granite correctly notes that we may consider unpublished state decisions, even though such opinions have no precedential value."). As for Plaintiff's claim for interference with custodial relations, Plaintiff has not refuted EVA's argument that any such action would require that EVA have had knowledge that Plaintiff did not consent to his ex-wife's travel with the children and that it "abduct" or "otherwise compel or induce" the children to leave Plaintiff. *See, e.g.*, Cal. Civ.Code § 49(a) ("The rights of personal relations forbid: (a) The abduction or enticement of a child from a parent, or from a guardian entitled to its custody....."); *Surina*

are preempted by the Airline Deregulation Act ("ADA"). The preemption provision of the ADA prohibits, in pertinent part, any state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...." 49 U.S.C. § 41713(b)(1); *see also Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 222–23 & n. 1, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). This provision has been interpreted by way of a number of decisions of both the Supreme Court and the Ninth Circuit over the last two decades. That interpretation and analysis strongly suggests that Plaintiff's claims would not survive application of the ADA.

■ State laws "relate to" a price, route, or service if they have "a connection with or reference to" rates, routes or services. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). At the same time, state actions that are "too tenuous, remote, or peripheral" do not satisfy that connection requirement. *See id.* at 390, 112 S.Ct. 2031; *see also Wolens,* 513 U.S. at 224, 115 S.Ct. 817.

Plaintiff argues that his claims are not preempted for a number of reasons. First, he argues that both the Supreme Court and the Ninth Circuit have indicated that ADA preemption does not apply to or address negligence claims. As discussed further below, that is not an accurate description of the case law. Second, he points to *Wolens* as excepting from preemption cases based upon the enforcement of "self-imposed undertakings," such as

breach of contract actions. Obviously that is not at issue here, where EVA had no contractual or other "self-imposed" relationship with *Plaintiff.* Third, he notes that courts have repeatedly carved an exception for personal injury or wrongful death claims. Again, however, that is not this case. Even if Plaintiff's alleged emotional injuries could be deemed a "personal injury" claim for this purpose, the personal injury exception is often discussed as stemming from the lack of relationship to an airline's "price, route, or service." Here, as discussed further below, Plaintiff's action is directly connected to EVA's "services." While the Ninth Circuit's understanding of that term is fairly constricted—and in conflict with the majority of Circuits to have addressed its scope—that restrictive view has never been applied in a case seeking to impose liability on an airline for not adopting what a state or member of the public believes to be best practices in connection with the processing and boarding of passengers. Finally, Plaintiff takes the position that his claims should not be preempted because they do not interfere with the deregulatory mandate courts have understood the ADA to address. As with his other arguments, Plaintiff fails to persuade on that point as well.

There is no support for the assertion that negligence claims, as a rule, are saved from preemption. Justice Stevens's view in *Wolens*—that, in his opinion, "private tort actions based on common-law negligence ... are not pre-empted"—came in the form of a concurrence in part and

---

*v. Lucey,* 168 Cal.App.3d 539, 542–43, 214 Cal.Rptr. 509 (1985) ("A violation of that right gives rise to an action by the parents for damages from a person who by force abducts a child from its home or who, with knowledge that the parents have not consented, induces the child to leave home, or who, with knowledge that the child is away from home against

the will of the parents, imprisons the child or induces it not to return home."); *Braden,* 2010 WL 3993215, *5, 2010 Cal.App. Unpub. LEXIS 8102, *14–15. Those facts simply are not present in this case in any way remotely compliant with *Twombly* and *Iqbal* (and Plaintiff has offered no reason to believe he could amend so as to add them).

dissent in part. *See Wolens,* 513 U.S. at 235, 115 S.Ct. 817 (Stevens, J., concurring in part and dissenting in part). Although the Ninth Circuit referenced that position in *Ginsberg v. Northwest, Inc.,* 653 F.3d 1033, 1038 n. 2 (9th Cir.2011), it was by no means the Ninth Circuit's *holding* in that case, which dealt simply with whether a claim for breach of the implied covenant of good faith and fair dealing was preempted. *See also United Airlines, Inc. v. Mesa Airlines, Inc.,* 219 F.3d 605, 609–11 (7th Cir.2000) (concluding that fraudulent inducement claim was preempted and noting that Justice Stevens's view did not garner a majority).

That being said, there is little question that, by judicial gloss, personal injury claims—or at least "run-of-the-mill personal injury claims"—have been excepted from application of the ADA's preemption provision. In *Wolens,* for example, the Court noted that the airline and the federal government (as *amicus curiae*) effectively conceded that safety-related tort claims likely would not be preempted. *See* 513 U.S. at 231 n. 7, 115 S.Ct. 817; *see also Ginsberg,* 653 F.3d at 1041 ("In *Wolens* all the justices—including the dissenters—agreed that the ADA does not preempt common law tort claims such as personal injury and wrongful death, even though airline costs and fares would be affected by how restrictive a particular state's law may be.") (quoting *Wolens,* 513 U.S. at 234–35, 115 S.Ct. 817); *DiFiore v. Am. Airlines, Inc.,* 646 F.3d 81, 87 (1st Cir.) ("These circuit cases confirm our view that the Supreme Court would be unlikely—with some possible qualifications-to free airlines from most *conventional* common law claims for tort...."), *cert. denied,* —— U.S. ——, 132 S.Ct. 761, 181 L.Ed.2d 483 (2011) (emphasis added).

For instance, in *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259 (9th Cir.1998) (*en banc*), the *en banc* Ninth Circuit addressed cases involving personal injuries suffered when passengers were struck with service carts and luggage falling from overhead bins, tripped over luggage left in aisles, or fell when disembarking the plane on a stairway or climbing aboard a shuttle bus transporting them to lodging following denial of boarding for medical reasons. *See id.* at 1261–62; *see also Duncan v. Northwest Airlines, Inc.,* 208 F.3d 1112, 1115 (9th Cir.2000) ("*Charas* makes clear ... that the imposition of liability as a result of *a personal injury action* does not sufficiently interfere with the objectives of airline deregulation to warrant preemption of the action—in other words, the connection between an award in a tort case and an airline's 'services' is simply too tenuous.") (emphasis added); *DiFiore,* 646 F.3d at 87 ("Negligence claims have been upheld against airlines for injuries occurring during airline operations themselves, and the Ninth Circuit has even held possible a claim that might entail a rearrangement of cabin seating to reduce the risk of deep vein thrombosis."); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186, 194 (3d Cir.1998) ("It is highly unlikely that Congress intended to deprive passengers of their common law rights to recover for death or personal injuries sustained in air crashes."). *But see Witty v. Delta Air Lines, Inc.,* 366 F.3d 380 (5th Cir.2004) (rejecting Ninth Circuit approach *vis a vis* deep vein thrombosis warning claims). Yet, even *Charas* recognized that, to that point in time, both Supreme Court decisions analyzing the ADA's preemption provision indicated only that the ADA would not preempt "*most* state law tort claims." *Charas,* 160 F.3d at 1263–64 (emphasis added). Obviously, this case does not involve a safety-related tort claim.

█ Thus, the question is not whether an entire category of claims either is or is

**1302**

not preempted; the Court must look to the nature of the particular claim advanced. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996) (*"Morales* does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA. Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services."). Consistent with the Supreme Court's first approach to the issue in *Morales,* it is only where the connection between the state tort claim and the airline's prices, routes or services is too "peripheral" that the claim is not preempted. *See Charas,* 160 F.3d at 1265 (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. 2031); *see also Wolens,* 513 U.S. at 234 n. 9, 115 S.Ct. 817 (noting that Justice O'Connor's "all is pre-empted" position in partial dissent and partial concurrence in that case "leaves room for personal injury claims, but only by classifying them as matters not 'relating to [air carrier] services.'"); *Montalvo v. Spirit Airlines,* 508 F.3d 464, 475 (9th Cir.2007) ("Congress' intent in deregulating the aviation industry was to 'encourage the forces of competition,' not to obviate all tort claims under state law that *might in some peripheral way* impact the airlines.") (quoting *Charas,* 160 F.3d at 1266) (emphasis added). The kind of "tenuous, remote, or peripheral," *Morales,* 504 U.S. at 390, 112 S.Ct. 2031, connection that personal injury claims (such as those involved in *Charas* ) have to prices, routes and services is not present here.

■ It is relatively clear to this Court that Plaintiff's claims do have the necessary prohibited connection to EVA's "services." Although the Ninth Circuit has held that the terms "prices, routes and services" encompass only "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail," but not the "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities," *Charas,* 160 F.3d at 1261,[3] it was not considering any type of "service" (using the colloquial scope of the term) such as that which is at issue due to the nature of Plaintiff's claims here. While *Charas's* construction of "service" might therefore be *useful* in deciding whether Plaintiff's claims have a prohibited connection to EVA's "services," it does not *decide* the issue here. *See also Duncan,* 208 F.3d at 1114 ("While Duncan's appeal was pending, we *substantially clarified* the scope of [ADA] preemption in *Charas....*") (emphasis added). *But see id.* ("In [*Charas* ], we provided a *definitive* interpretation of the term 'service': we concluded that 'Congress used the word "service" in the phrase "rates, routes, or service" in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail.'") (quoting *Charas,* 160 F.3d at 1261) (emphasis added).[4]

**3.** *See also Charas,* 160 F.3d at 1265–66 ("'Rates' indicates price; 'routes' refers to courses of travel. It therefore follows that 'service,' when juxtaposed to 'rates' and 'routes,' refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, 'This airline provides service from Tucson to New York twice a day.') [.]").

**4.** Insofar as the California Court of Appeal relied, in its unpublished decision in *Braden,* upon the Ninth Circuit's definition in *Charas* and *Duncan* as conclusively resolving the question of whether the airline services at issue in that case (and this case) were "ser-

In fact, there is at least some basis to question whether *Charas's* definition is even valid any longer. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir.2008) (criticizing *Charas's* approach to the definition of "service" as "inconsistent with the Supreme Court's recent decision in *Rowe [v. New Hampshire Motor Transport Association*, 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) ]," noting that, in the latter case, "the Court necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations"); *id.* (noting that *Rowe* determined "that the ADA's preemption provision reached, among other things, the imposition of recipient *verification requirements* on tobacco shipments" by way of state's "efforts directly to regulate carrier *services*") (underline added; italics in original); *DiFiore*, 646 F.3d at 87–88 (indicating that, *post-Rowe*, "[t]he weight of circuit court authority . . . favors the broader definition" of "service" to "include steps that occur before and after the airplane is actually taxiing or in flight"). Although *Rowe* did not simply involve the ADA, its preemption analysis controls because it interpreted the same language. *See Rowe*, 552 U.S. at 370, 128 S.Ct. 989.

Whether or not *Rowe* invalidated the Ninth Circuit's understanding of "service" in general, its guidance only strengthens the view that Plaintiff's claims here are preempted. In that decision, the Supreme Court concluded that a provision of Maine law was preempted where it would require a carrier of tobacco products "to check each shipment for certain markings and to compare it against the Maine attorney general's list of proscribed shippers[,] . . . thereby directly regulat[ing] a significant

aspect of the motor carrier's package pick-up and delivery service." *Rowe*, 552 U.S. at 372–73, 128 S.Ct. 989. The Court made clear that "[i]f federal law pre–empts state regulation of the details of an air carrier's frequent flyer program, a program that primarily promotes carriage, it must preempt state regulation of the essential details of a motor carrier's system for picking-up, sorting, and carrying goods— essential details of the carriage itself." *Id.* at 373, 128 S.Ct. 989 (omitting internal citation); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 660 F.3d 384, 396 n. 8 (9th Cir.2011) (acknowledging *Rowe's* description of a motor carrier's services as "its system for picking up, sorting, and carrying goods"), *petition for cert. filed*, 80 U.S.L.W. 3404 (U.S. Dec. 22, 2011); *Ginsberg*, 653 F.3d at 1039 ("Indeed, compared to either *Wolens* or *Morales*, the link in *Rowe* was more directly related to 'routes, rates, or services' because it regulated primary activity that feel under the ADA, thereby frustrating Congress's 'manifest purpose' to deregulate the industry.").[5]

Clearly, what Plaintiff seeks to hold EVA responsible for not doing is fundamentally distinguishable from "in-flight beverages, personal assistance to passengers, the handling of luggage," or "similar amenities" the Ninth Circuit considers outside the scope of preemption. *See Charas*, 160 F.3d at 1261. It is also fundamentally distinct from an airline's practice of "permitting or prohibiting smoking," which the Ninth Circuit rejected as a "service" in *Duncan, see* 208 F.3d at 1115. It is much more akin to—and even much more directly related to—EVA's services than the baggage handling the First Circuit only

vices" within the meaning of the ADA, the Court would disagree with that portion of the decision. *See Braden*, 2010 WL 3993215, *1–3, 2010 Cal.App. Unpub. LEXIS 8102, *4–8.

5. In his Opposition, Plaintiff offers virtually no discussion of Rowe, and certainly no response to these points (which were raised by EVA's motion).

recently determined brought a case within the ADA's preemptive scope (which would appear to be in conflict with *Charas* ). *See DiFiore,* 646 F.3d at 87 (including airline's "conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the 'service' referred to in the federal statute"). EVA's ticketing and boarding process is not an "amenity;" it is a necessary part of an airline's boarding process, and without a boarding process, airlines would provide no "service" to passengers at all.[6]

At least three courts of appeal have specifically included "boarding procedures" within the definition of "service." *See Air Transp. Ass'n of Am. v. Cuomo,* 520 F.3d 218, 223 (2d Cir.2008) ("A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers.") (citing cases); *Smith v. Comair, Inc.,* 134 F.3d 254, 258–59 (4th Cir.1998); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (*en banc* ). Indeed, the Supreme Court itself has at least suggested this conclusion. In *Wolens,* the Supreme Court determined that the plaintiffs claims related to the airline's "services" insofar as they related to "access to flights." 513

U.S. at 226, 115 S.Ct. 817; *see also Ginsberg,* 653 F.3d at 1042 (noting that "[t]he breach [of implied covenant] claim in [*Wolens* ] related to prices and services because the alleged facts referenced ticket-pricing *and access to flights"* ) (Rymer, J., concurring) (emphasis added).[7] *Charas* never even mentioned this reference.

Contrasting the situation at issue here with that present in *Duncan* reveals yet another reason why Plaintiff's case is distinguishable from both *Duncan* and *Charas.* In *Duncan,* the Ninth Circuit rejected the argument that an action "related to" a "service" under the theory that it might force the airline to prohibit smoking on certain flights, thereby compelling the airline, for economic reasons, to drop or reroute those flights. *See Duncan,* 208 F.3d at 1115. If that type of causal relationship were sufficient to invoke preemption, the Ninth Circuit reasoned, then "almost all personal injury claims would be preempted ... because all successful tort suits ... invariably carry with them an economic cost for the defendant airline [and] may even, in some instances, cause the airline to decide to make changes in its operations." Unlike *Duncan,* however, tort liability here—in a non-personal injury tort case (or at least a *non-physical* personal injury tort case)—is *not remotely* connected to the airline's service-it is *directly* connected to it, a conclusion only strengthened by the Supreme Court's analysis in *Rowe. See Rowe,* 552 U.S. at 371, 128 S.Ct.

---

6. To be clear, the unnecessary/necessary distinction is one that the Supreme Court has rejected in the course of performing its ADA preemption analysis. *See Wolens,* 513 U.S. at 226, 115 S.Ct. 817 (*"Morales,* we are satisfied, does not countenance the Illinois Supreme Court's separation of matters 'essential' from matters unessential to airline operations."). Equally, however, this would seem to call into some question just how true to Supreme Court precedent the Ninth Circuit's position in *Charas* and *Duncan* would be.

7. Shortly after *Charas,* three judges on the Supreme Court indicated their desire to take up the issue of how to define "service." *See Northwest Airlines, Inc. v. Duncan,* 531 U.S. 1058, 121 S.Ct. 650, 650, 148 L.Ed.2d 571 (2000) (O'Connor, J., Rehnquist, C.J., and Thomas, J., dissenting from denial of petition for *certiorari* ) (describing "directly conflicting positions" of the Circuit Courts of Appeal on the interpretation of "service").

989 (finding Maine law preempted where it forebode licensed tobacco retailers to employ a delivery service "unless that service follows particular delivery procedures"). In *Duncan,* an added step lengthened the causal chain, so as to make it too tenuous: the court concluded that "allowing smoking"—the basis for the theory of liability advanced in the suit—was not a "service," *see id.,* and the downstream impact a judgment punishing the airline for such a policy would have—the cancellation or re-routing of flights—was too far removed from any tort liability. Here, instead, if one is to conclude that EVA's boarding procedures constitute a "service," a tort judgment would realistically directly impact *that service,* not some other remote, tenuous or downstream service (such as the provision of flights in general).

Finally, even if it is not simply how direct or "peripheral" a connection exists between a claim/law and an airline's prices, routes or services that determines the preemption question (the analysis that section 41713(b)(1)'s plain language suggests is appropriate, or at least *most* appropriate), it is not so clear to this Court that effectively imposing on airlines operating in California the obligation to perform certain measures to determine the proper custodial status of children traveling with only one adult would not "adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Charas,* 160 F.3d at 1261; *see also Ginsberg,* 653 F.3d at 1040 ("In *Charas* we concluded that, taken together, the savings clause and preemption clause 'evidence[ ] congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation.'") (quoting *Charas,* 160 F.3d at 1265). Although the Ninth Circuit has indicated that a finding

of liability in a tort suit would not have that effect, it did so in a case—*Duncan*—where the connection to the airline's "service" was much more peripheral or remote. *See Duncan,* 208 F.3d at 1115 ("*Charas* makes clear, however, that the imposition of liability as a result of a personal injury action does not sufficiently interfere with the objectives of airline deregulation to warrant preemption of the action—in other words, the connection between an award in a tort case and an airline's 'services' is simply too tenuous.").

Moreover, a determination that Plaintiff's claims would not have the prohibited impact on deregulation would appear to conflict with the Supreme Court's decision in *Rowe.* There, the Court decided that the law in question would have a significant and adverse impact "in respect to the federal Act's ability to achieve its pre-emption-related objectives [because it would] require carriers to offer a system of services that the market does not now provide (and which the carriers would prefer not to offer)." *Rowe,* 552 U.S. at 371–72, 128 S.Ct. 989; *see also id.* ("[T]he effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate."); *Am. Trucking,* 660 F.3d at 396 ("If the State, for example, mandates that motor carriers provide a particular service to customers, or forbids them to serve certain potential customers, the effect is clear, and the provision is preempted if it has the force and effect of law."). Allowing one state to do so "would allow other States to do the same. And to interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations." *Rowe,* 552 U.S. at 373, 128 S.Ct. 989. This, the Su-

preme Court determined, violated the de-regulatory purpose of the statute(s).[8]

Under the foregoing analysis, Plaintiff's three claims for relief would be preempted by the ADA. The Court should therefore grant EVA's motion for judgment on the pleadings. Given this ruling, the Court need not consider or resolve EVA's other arguments not discussed herein. Nor need it rule on EVA's request to amend the scheduling order. That motion is therefore deemed moot.

---

8. This Court is aware that in *Pittman v. Grayson*, 869 F.Supp. 1065 (S.D.N.Y.1994), involving essentially the same facts as are present here and in which the plaintiff sued for intentional interference with a custodial relationship, intentional infliction of emotional distress and false imprisonment, the court determined that allowing the suit to go forward "would not frustrate the ADA'S economic deregulation of the airlines nor would it significantly impact the Airline's competitive posture," especially because the plaintiff was alleging "intentional torts which repre-sent the civil offspring of criminal behavior." *Id.* at 1074. For the reasons discussed in the text above, that district court decision would appear to be untenable in light of *Rowe*. Moreover, Plaintiff's first two claims here are not grounded in intentional torts, but negligence. As to Plaintiff's third claim, for the reasons set forth in Footnote 2, *supra*, it would not survive even absent the Court's preemption analysis, and there is no basis, on the allegations of this case, to conclude that Plaintiff could potentially cure the defects in that claim by way of amendment.