[No. S162570. Aug. 23, 2010.]

KEVIN MURRAY, Plaintiff and Appellant, v.
ALASKA AIRLINES, INC., Defendant and Respondent.

862

COUNSEL

Law Offices of James P. Stoneman II and James P. Stoneman II for Plaintiff and Appellant.

Howard Rice Nemerovski Canady Falk & Rabkin, David J. Reis and Jason M. Habermeyer for Defendant and Respondent.

OPINION

**BAXTER, J.**—The doctrine of collateral estoppel, or issue preclusion,[1] is firmly embedded in both federal and California common law. It is grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." (*Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 336, fn. 23 [58 L.Ed.2d 552, 99 S.Ct. 645].) "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." (*Id.* at p. 326, fn. omitted.)

We granted the request of the United States Court of Appeals, Ninth Circuit, to answer the following question of California law pertaining to collateral estoppel: Should issue-preclusive effect be given to a federal agency's investigative findings, when the subsequent administrative process provides the complainant the option of a formal adjudicatory hearing to determine the contested issues de novo, as well as subsequent judicial review of that determination, but the complainant elects not to invoke his right to that additional process, and the agency's findings and decision thereby become a final, nonappealable order by operation of law?[2] (See *Murray v. Alaska Airlines, Inc.* (9th Cir. 2008) 522 F.3d 920 (*Murray v. Alaska*).)

The Ninth Circuit has furnished the following statement of facts and procedural history (substantially reproduced here with minor nonsubstantive and stylistic modifications) to more fully explain the context in which the question arises. (*Murray v. Alaska, supra,* 522 F.3d at pp. 921–922.)

### Factual and Procedural Background

Kevin Murray (Murray), a quality assurance auditor at Alaska Airlines, Inc. (Alaska), brought safety concerns to the attention of the Federal Aviation

---

[1] Many courts have used these terms interchangeably, and we do so here.

[2] We have reformulated the question to reflect that the federal agency's investigative findings here at issue have become a final nonappealable order by operation of law, which appropriately narrows the focus of the inquiry. (Cal. Rules of Court, rule 8.548(a).)

Administration (FAA), which then conducted an investigation that revealed "significant discrepancies relating to air carrier safety." Subsequently, the maintenance facility at which Murray worked was closed and his position was outsourced. Murray was not rehired by Alaska.

In December 2004, Murray filed an administrative complaint with the United States Secretary of Labor (Secretary) under the whistleblower protection provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21; Pub.L. No. 106-181 (Apr. 5, 2000) 114 Stat. 351), seeking reinstatement, backpay, and compensatory damages. (See 49 U.S.C. § 42121(b)(1), (b)(3)(B).)[3] Invocation of AIR 21's administrative complaint procedure is voluntary and optional. (§ 42121(b)(1).) Murray—through his lawyer, Rand Stephens—alleged he had been denied the opportunity to apply or interview for open positions at other Alaska facilities, "despite [his] stated and documented request to remain" with the company, "in retaliation for [his] notifying [FAA inspectors] of Federal Aviation Regulations . . . violations and for serious airworthiness issues posing a threat to air safety." He also alleged that his superiors at Alaska "admonished and chastised [him] . . . for disclosing information to the FAA."

Pursuant to section 42121(b)(2)(A), the Secretary conducted an investigation, during which Alaska submitted a written response to Murray's complaint, produced relevant documentation, and offered testimonial evidence. Murray was never contacted by the Secretary's investigator. He was not given a copy of the documents provided by Alaska or its witnesses' statements. Nor did Murray have an opportunity to submit additional information to the Secretary, or respond to Alaska's arguments, before the Secretary rendered her findings.

In June 2005, the Secretary notified Murray by letter of her investigative findings. The Secretary found that Murray had participated in protected whistleblowing activity and that his termination and Alaska's subsequent failure to rehire him constituted adverse employment action. Notwithstanding that determination, the Secretary further determined there was "no credible basis to believe [Alaska] violated the employee protection provisions of AIR 21," because the "record fail[ed] to establish any connection between [Murray's] termination and his involvement in protected activity." The Secretary found that Murray had applied electronically for positions at other Alaska facilities and then "inexplicably removed his resume . . . the same night he applied." "The evidence showed that it was impossible for [Alaska] to remove [Murray's]

---

[3] Hereinafter, all statutory citations are to title 49 of the United States Code unless otherwise noted.

resume from the employment website of its own accord." The Secretary therefore concluded that Murray "failed to establish a nexus between his protected activity and the perceived discriminatory action taken against him." The Secretary dismissed Murray's administrative complaint because he failed to demonstrate there was "reasonable cause to believe" (§ 42121(b)(2)(A)) that his whistleblowing was a "contributing factor in [Alaska's] unfavorable personnel action." (§ 42121(b)(2)(B)(iii); see 29 C.F.R. § 1979.105(a) (2010).)

The Secretary's letter closed by notifying Murray that he had "important rights of objection which must be exercised in a timely fashion." "AIR 21 permits an aggrieved party, WITHIN 30 DAYS . . . to file objections with the Department of Labor and to request a hearing on the record before an Administrative Law Judge." (Original capitalization.) The letter also warned that if "no objections are filed WITHIN 30 DAYS, this decision shall become final and not subject to judicial review." (Original capitalization.) Murray never filed objections or requested an on-the-record hearing. Nor did he take any steps to formally withdraw his administrative complaint. (Cf. 29 C.F.R. § 1979.111(a) (2010) [allowing complainant to withdraw his complaint by filing a written withdrawal with the Asst. U.S. Sect. of Labor, who "then determine[s] whether the withdrawal will be approved"].) On July 8, 2005, by operation of law, the Secretary's preliminary investigative findings were "deemed a final order . . . not subject to judicial review." (§ 42121(b)(2)(A).)

On August 2, 2005, Murray, still represented by counsel, filed a complaint against Alaska in California state court, claiming that he had been wrongfully terminated and retaliated against for whistleblowing, in violation of the public policy of California. (See Lab. Code, § 1102.5, subd. (b).) Invoking diversity jurisdiction, Alaska removed the action to federal district court. The district court, relying on the Secretary's findings in her final order, granted summary judgment to Alaska based on collateral estoppel. Murray timely appealed.

### Discussion

The Ninth Circuit has asked this court to determine whether certain factual findings made in the Secretary's final nonappealable order in the AIR 21 administrative action that preceded this state court lawsuit (removed to federal court on grounds of diversity jurisdiction) may now be afforded issue-preclusive effect under California law. Given the particular factual and procedural circumstances of this case, and the particular provisions of the AIR 21 statutory scheme here at issue, we conclude that they should.

■ Collateral estoppel is a distinct aspect of res judicata. " 'The doctrine of res judicata gives conclusive effect to a former judgment in subsequent litigation between the same parties involving the same cause of action. A

prior judgment for the plaintiff results in a merger and supersedes the new action by a right of action on the judgment. A prior judgment for the defendant on the same cause of action is a complete bar to the new action. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 147–148, pp. 3292–3293.) Collateral estoppel . . . involves a second action between the same parties on a different cause of action. The first action is not a complete merger or bar, but operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action. (*Id.*, § 197, at p. 3335.)' (*Preciado* v. *County of Ventura* (1982) 143 Cal.App.3d 783, 786–787, fn. 2 [192 Cal.Rptr. 253].)" (*Rymer* v. *Hagler* (1989) 211 Cal.App.3d 1171, 1178 [260 Cal.Rptr. 76] (*Rymer*).)

 This case involves the doctrine of collateral estoppel as applied to the final decision of a federal administrative agency, as well as a corollary of that doctrine sometimes described as "judicial exhaustion." It is settled that the doctrine of collateral estoppel or issue preclusion is applicable to final decisions of administrative agencies acting in a judicial or quasi-judicial capacity. (See *Astoria Federal S. & L. Assn.* v. *Solimino* (1991) 501 U.S. 104, 107 [115 L.Ed.2d 96, 111 S.Ct. 2166] [extending the doctrine to the final adjudications of both state and federal agencies]; *United States* v. *Utah Constr. Co.* (1966) 384 U.S. 394, 421–422 [16 L.Ed.2d 642, 86 S.Ct. 1545] (*Utah Constr. Co.*); *People* v. *Sims* (1982) 32 Cal.3d 468, 479 [186 Cal.Rptr. 77, 651 P.2d 321] (*Sims*); *French* v. *Rishell* (1953) 40 Cal.2d 477, 480–481 [254 P.2d 26]; *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 242 [244 Cal.Rptr. 764].) As we explained in *McDonald* v. *Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88 [84 Cal.Rptr.3d 734, 194 P.3d 1026], judicial exhaustion "may arise when a party initiates and takes to decision an administrative process—whether or not the party was required, as a matter of *administrative* exhaustion, to even begin the administrative process in the first place. Once a decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. (*Johnson* v. *City of Loma Linda* (2000) 24 Cal.4th 61, 69–72 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims. (*Id.* at p. 76.)" (*McDonald, supra*, at p. 113.)

 This court has further explained that "[i]ndicia of [administrative] proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's

ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944 [38 Cal.Rptr.3d 220, 126 P.3d 1040] (*Pacific Lumber*).)

Ultimately, "the inquiry that must be made is whether the traditional requirements and policy reasons for applying the collateral estoppel doctrine have been satisfied by the particular circumstances of this case." (*Sims, supra,* 32 Cal.3d 468, 483.) Here, Murray, who has been represented by counsel at every stage of the prior administrative and present court proceedings, voluntarily instituted an action against his former employer, Alaska, under the federal whistleblower protection statute, AIR 21. At the conclusion of the Secretary's preliminary investigation, and upon receipt of her adverse factual findings and decision, Murray effectively abandoned his administrative action and brought suit against Alaska in state court, raising claims that would ultimately turn on the same key factual matter of causation resolved against him in the earlier proceedings.[4] He failed to take the steps required to lawfully withdraw his administrative complaint, failed to exercise his absolute statutory right to a formal de novo hearing of record before an administrative law judge (ALJ), and, consequently, failed to exercise his statutory right to appeal any adverse findings and decision of the ALJ to the Ninth Circuit. All such omissions occurred in the face of clear statutory notice to Murray that his forfeiture of such rights would result in the Secretary's preliminary factual findings and decision becoming a final nonappealable order by operation of law. (§ 42121(b)(2)(A).)

In short, this case involves a variation of the usual factual pattern that implicates the doctrine of collateral estoppel and its corollary principle of judicial exhaustion. The AIR 21 statutory scheme afforded Murray an absolute right to a full de novo trial-like hearing before an ALJ, a hearing we find would fully comport with the requirements set forth in *Pacific Lumber* for establishing that the administrative proceedings were "undertaken in a judicial capacity." (*Pacific Lumber, supra,* 37 Cal.4th. at p. 944.)[5] Here, however,

---

[4] As the Ninth Circuit's order explains, Murray's state law claims include causation as a required element. (*Murray v. Alaska, supra,* 522 F.3d at p. 922, fn. 2.) Claims of whistleblower harassment and retaliatory termination may fail where the complainant "cannot demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment by [the employer]." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1258 [32 Cal.Rptr.2d 223, 876 P.2d 1022].)

[5] The Ninth Circuit's order observes, "An AIR 21 complainant may contest the Secretary's investigative findings by filing 'objections to [those] findings' and 'request[ing] a hearing on the record' within 30 days of receiving them. *See* § 42121(b)(2)(A); 29 C.F.R. § 1979.106(a). If the Secretary's findings are timely challenged, AIR 21 provides for a *de novo*, on-the-record hearing before an Administrative Law Judge. *See* 29 C.F.R. § 1979.107(a)–(b); *id.* at

Murray admittedly failed to invoke, and thereby forfeited, his right to such a formal adversarial hearing of record. None of this court's previous decisions directly addresses whether adverse administrative findings may be given collateral estoppel effect in a subsequent court suit if the complainant against whom estoppel is being sought forfeited his right to such a hearing, resulting in the agency's findings becoming a final, nonappealable order by operation of law.

■ The high court has explained that the focus of our inquiry should be on whether the party against whom issue preclusion is being sought had "an adequate opportunity to litigate" the factual finding or issue in the prior administrative proceeding. (*Utah Constr. Co., supra*, 384 U.S. at p. 422.) We followed *Utah Constr. Co.* in *Sims, supra*, 32 Cal.3d 468, 479, commenting that "[t]his standard formulated by the Supreme Court is sound . . . ." Appellate courts of this state have followed suit, likewise recognizing that "[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity. (*Teitelbaum Furs, Inc.* v. *Dominion* (1962) 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439] . . . .)" (*Rymer, supra*, 211 Cal.App.3d at p. 1179, italics added [no showing complainant was denied opportunity to present relevant evidence in administrative proceeding]; see also *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 [111 Cal.Rptr.2d 870] [same].)

Focusing the inquiry on the *opportunity to litigate* issues in the prior administrative proceeding is particularly appropriate where the party who initiates an administrative complaint apparently abandons his action upon receiving an adverse ruling, thereby forfeiting his statutory rights to a formal de novo hearing of record before an ALJ, and then seeks to relitigate the same issues decided in the agency's final order against the same party in a subsequently filed court action.

We confronted facts somewhat analogous to those now before us in *Sims, supra*, 32 Cal.3d 468. There, the issue was whether a party to an administrative action who simply refused to meaningfully participate in the proceedings was estopped from relitigating, in a subsequent court action against the same party, identical factual issues decided in the earlier administrative action. The county department of social services (County) in *Sims* informed the respondent, a welfare recipient, that she had received monies and food stamp

§ 1979.109(a) (written findings and conclusions); 29 C.F.R. § 18.13 (discovery procedures); *id.* at § 18.24 (subpoena power); *id.* at § 18.34 (right to personal appearance and representation by counsel); *id.* at § 18.38 (prohibition on ex parte communications); *id.* at § 18.52 (decision based on record of hearings)." (*Murray v. Alaska, supra*, 522 F.3d at p. 923, fn. 4.)

benefits to which she was not entitled, allegedly procured by fraud. The County demanded that the respondent make restitution payments, and she agreed. The County additionally served notice on her, proposing to reduce her future cash grants to further compensate for the alleged overpayments. The respondent then exercised her statutory right to a "fair hearing" before a hearing officer of the State Department of Social Services (DSS) to challenge the propriety of the County's action. Meanwhile, the district attorney, on behalf of the state, filed criminal charges against the respondent alleging violations of the Welfare and Institutions Code based on the same allegations of welfare fraud raised in the administrative action. (*Sims, supra*, 32 Cal.3d at p. 473.)

While the criminal charges were pending, the respondent's hearing was held before a DSS hearing officer. "The County declined to present any evidence against respondent at the hearing. It contended that the DSS lacked jurisdiction to hear the case since criminal charges were still pending in the superior court. Respondent submitted the County's investigation report to the hearing officer and presented evidence to disprove the allegation of fraud. [Her husband] testified that during the time in question he lived at addresses other than that of respondent." (*Sims, supra*, 32 Cal.3d at p. 474.) The hearing officer concluded the agency had jurisdiction to hear the case, and that the County, through its inaction, had failed to meet its burden of proving welfare fraud. The director of the DSS adopted the hearing officer's result. The County neither requested a rehearing nor sought judicial review of the agency's decision. (*Ibid.*)

Thereafter, in the criminal proceeding, the superior court applied the doctrine of collateral estoppel to dismiss the criminal charges against the respondent. We affirmed on appeal, concluding that the agency's determination of an issue (welfare fraud) common to both the administrative and criminal proceedings could properly be accorded collateral estoppel effect in the later criminal prosecution because the traditional requirements and policy reasons for applying collateral estoppel had been satisfied. The administrative hearing was a quasi-judicial adversarial proceeding, since the administrative agency resolved disputed issues of fact properly before it, and since the hearing process provided both parties with an adequate opportunity to fully litigate the issues underlying their claims. Although the hearing was not conducted according to the rules of evidence applicable to judicial proceedings, we found this distinction did not preclude a finding that the administrative agency was acting in a quasi-judicial capacity. The welfare fraud issue litigated in the administrative proceeding was identical to that involved in the

criminal prosecution. (*Sims, supra*, 32 Cal.3d at pp. 484–489.) We further found that the public policy considerations underlying the doctrine were satisfied, in that according the administrative agency's final decision collateral estoppel effect promoted judicial economy, avoided the possibility of inconsistent judgments, and protected the accused from harassment through repetitive litigation. (*Ibid.*)

█ *Sims* explained that "[a]n issue is actually litigated '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . . A determination may be based on a *failure of . . . proof* . . . .' (Rest.2d, Judgments (1982) § 27, com. d, p. 255, italics added.) [¶] Here, the welfare fraud issue was 'properly raised' by respondent's request for a fair hearing pursuant to Welfare and Institutions Code section 19050. After the fair hearing, the controversy was 'submitted' to the DSS for a 'determination' on the merits. The hearing officer found that the County had failed to prove that respondent had fraudulently obtained welfare benefits. [¶] Thus, it is clear that respondent's guilt or innocence of welfare fraud was actually litigated at the DSS fair hearing. The County's failure to present evidence at the hearing did not preclude the fraud issue from being 'submitted' to and 'determined' by the DSS." (*Sims, supra*, 32 Cal.3d at p. 484.)

*Sims* explained as well that "the fair hearing process provided both the County and respondent with *an adequate opportunity to fully litigate their claims* before the DSS. That the County failed to present evidence or otherwise participate at the hearing does not prove the contrary. The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra*, 58 Cal.2d at p. 607.) Even a judgment of default in a civil proceeding is 'res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.' (*Fitzgerald* v. *Herzer* (1947) 78 Cal.App.2d 127, 132 [177 P.2d 364].) [¶] What is significant here is that the County had notice of the hearing as well as the opportunity and incentive to present its case to the hearing officer." (*Sims, supra*, 32 Cal.3d at p. 481, italics added.) "The People cannot now take advantage of the fact that the County avoided its litigation responsibilities and chose not to present evidence at the prior proceeding." (*Id.* at pp. 481–482.)

California intermediate appellate courts have likewise invoked the principles we explained in *Sims* in various factual settings. For example, in *Rymer, supra*, 211 Cal.App.3d at page 1179, an employee (Rymer) filed an administrative complaint with the Workers' Compensation Appeals Board (WCAB) against his employer, seeking compensation for injuries resulting from a

work-related accident. He later filed a civil complaint for damages against the employer in the superior court, predicated on the same injuries received in the same accident, alleging the employer had failed to provide workers' compensation benefits to him when injured. The two proceedings progressed concurrently. (*Id.* at p. 1175.)

Thereafter, Rymer brought a motion in the WCAB proceeding to exclude Fremont Indemnity Company (Fremont) as a party to the proceeding, on the basis that Fremont was not the workers' compensation carrier for the employer at the time of his injuries. The WCAB judge denied the motion, ruling that Fremont either provided workers' compensation coverage to the employer on the date of the injury, or was estopped from denying coverage based on its admission of such coverage. The parties were each notified they had a statutory right to petition for reconsideration of the decision. Further testimony on the merits of the workers' compensation claim was heard that same day, but the hearing was not concluded. A second day of testimony was set for a later date, but was never held. Thereafter, upon being served with a written copy of the minutes of the hearing at which the WCAB judge issued his coverage order as well as the order itself, Rymer successfully petitioned for a voluntary dismissal of his workers' compensation claim without seeking reconsideration of the ALJ's coverage ruling. (*Rymer, supra,* 211 Cal.App.3d at pp. 1175–1176.)

The employer in *Rymer* subsequently filed a motion for judgment on the pleadings in the superior court action under the exclusivity rule of workers' compensation law, on the ground that the WCAB judge's ruling on the issue of workers' compensation coverage was binding on Rymer and dispositive of his claim. The trial court granted the motion, and judgment on the pleadings was entered in the employer's favor. The Court of Appeal affirmed, explaining that "the parties were given an opportunity to present evidence and to litigate the coverage issue. The decision in the WCAB proceeding resolved a disputed issue by applying a rule of law . . . to a specific set of facts. (See *People* v. *Sims, supra,* 32 Cal.3d at p. 480.) [Rymer] was afforded a full hearing to present evidence under oath or affirmation. Each party was represented by counsel. Each party was provided an opportunity to present oral argument. While no evidence was introduced on the issue of coverage and the WCAB judge heard only argument of counsel, there is no showing that [Rymer] was denied the opportunity to introduce evidence on the issue. He simply chose not to do so. It is the opportunity to litigate that is important in these cases, not whether the litigant availed himself or herself of the opportunity." (*Rymer, supra,* 211 Cal.App.3d at p. 1179, citation omitted.)

Similarly, in *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464 [249 Cal.Rptr. 578] (*Takahashi*), a public school teacher claiming she was wrongfully terminated for incompetency was found collaterally estopped from pursuing her civil and constitutional claims in court because she had failed to raise those claims as defenses to the charges of incompetency at the administrative hearing conducted before the Commission on Professional Competence, instead asserting that the commission had no jurisdiction to proceed. (*Id.* at pp. 1467–1468, 1470.) The *Takahashi* court observed, "There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated [court] action that resulted from termination of her employment alleged to be wrongful based on those same reasons." (*Id.* at p. 1485.)

In *Sims, Rymer,* and *Takahashi,* the parties against whom issue preclusion was sought were afforded hearings in their prior administrative proceedings, but failed to take full advantage of the opportunity to fully establish their claims àt those hearings. In *Rymer,* the complainant was afforded the opportunity to present evidence on the relevant issue at his hearing and simply chose not to do so. (*Rymer, supra,* 211 Cal.App.3d at p. 1179.) In *Takahashi,* the plaintiff chose to contest the jurisdiction of the agency to proceed with the hearing rather than argue her specific claims. (*Takahashi, supra,* 202 Cal.App.3d at p. 1470.) In *Sims,* the County "avoided its litigation responsibilities" altogether by "fail[ing] to present evidence or otherwise participate" in the prior administrative hearing process. (*Sims, supra,* 32 Cal.3d at pp. 482, 481.) We see no significant distinction between the situation here, where Murray forfeited his absolute right to a formal adversarial hearing of record before an ALJ, a hearing that would have plainly satisfied the requirement that the administrative proceeding be "undertaken in a judicial capacity" (*Pacific Lumber, supra,* 37 Cal.4th at p. 944) in order for collateral estoppel to apply, and the case of a party who appears at such a hearing but then chooses to present no evidence or otherwise refuses to participate in the proceedings. (*Sims,* at pp. 481–482.)

Our research reveals that federal and state courts in other jurisdictions have reached similar conclusions on similar facts. One particularly noteworthy decision is the federal district court decision in *Fadaie v. Alaska Airlines, Inc.* (W.D.Wn. 2003) 293 F.Supp.2d 1210 (*Fadaie*). In that case, plaintiff Fadaie, a former employee of Alaska like Murray, filed an AIR 21 administrative action raising wrongful discharge claims based on allegations that the airline had retaliated against him for whistleblowing activity. (293 F.Supp.2d at

p. 1217.) "For whatever reason, Mr. Fadaie opted not to request a hearing before an Administrative Law Judge." (*Id.* at p. 1219.) In a subsequent court action, Alaska moved to dismiss the plaintiff's suit on various grounds, including res judicata or estoppel. (*Id.* at pp. 1217–1220.) The plaintiff opposed the motion, "argu[ing] that *res judicata* is inappropriate as to any of the claims asserted in [the court] litigation because the procedures used by the [Secretary's] Regional Administrator did not afford Mr. Fadaie a full and fair opportunity to present his claims." (*Id.* at p. 1219.)

The *Fadaie* court first observed that "[p]ursuant to the Restatement (Second) of Judgments § 83: [¶] 'An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including . . . the right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties . . . .' " (*Fadaie, supra*, 293 F.Supp.2d at p. 1219, fn. omitted.)

The court went on to explain, "Plaintiff argues that the [Secretary's] decision was based on an investigation, rather than an adjudicative proceeding, and that he was never given an opportunity to contradict evidence presented by the employer. To the contrary, the procedures governing Mr. Fadaie's whistle-blower complaint afford ample opportunity to fully present his claims, including avenues of appeal that provided direct and apparently unique access to the federal appellate courts. As stated in the [Secretary's] decision letter issued on March 7, 2003, the statute under which plaintiff filed his administrative complaint provides for an agency determination, followed by a formal hearing on the merits before an Administrative Law Judge ('ALJ'). 49 U.S.C. § 42121(b)(2)(A). The proceedings before the ALJ are adversarial in nature and involve taking evidence, hearing testimony, and considering the arguments of the parties. The Secretary of Labor then makes his or her final decision based on the ALJ's recommendation and can choose from a full range of remedies when providing relief to the complainant. Any party aggrieved by the Secretary's decision can take a direct appeal to the Ninth Circuit. 49 U.S.C. § 42121(b)(4)(A). [¶] For whatever reason, Mr. Fadaie opted not to request a hearing before an Administrative Law Judge. After receiving the [Secretary's] decision letter, he decided not to follow through on the procedures set forth in the letter, thereby waiving his right to an adversarial hearing. Contrary to [plaintiff's] argument, [AIR 21] provides complainants with an opportunity to fully and fairly litigate their claims: plaintiff[] cannot now argue that the procedures utilized by the agency were insufficient when it was Mr. Fadaie's

choice to forego the admittedly sufficient procedures to which he was entitled." (*Fadaie, supra,* 293 F.Supp.2d at pp. 1219–1220, fn. omitted.)[6]

█ There is yet another aspect of the AIR 21 statutory scheme that buttresses our conclusion that factual findings made in the Secretary's final order can be given preclusive effect in a subsequent court action between the same parties. The "opportunity for judicial review of adverse rulings" is an

---

[6] The dissent asserts that *"Fadaie's* conclusions have been rejected by a more recent district court case considering the same question we face—whether a title 49 United States Code section 42121 investigation alone, without a hearing, is a worthy basis for collateral estoppel—and concluding, as I would, that it is not. (See *Hanna v. WCI Communities, Inc.* (S.D.Fla. 2004) 348 F.Supp.2d 1322, 1330–1331.)" (Dis. opn. of Werdegar, J., *post,* at p. 884, fn. 3.) The dissent misreads the *Hanna* decision. *Hanna* did not involve a whistleblower protection claim under the AIR 21, as did *Fadaie,* and as does this case. Rather, *Hanna* involved a claim for whistleblower retaliation under the Sarbanes-Oxley Act of 2002 (Pub.L. No. 107-204 (July 30, 2002) 116 Stat. 745; see 18 U.S.C § 1514A), which " 'provides that no company subject to the Securities Exchange Act of 1934 may retaliate against an employee who lawfully cooperates with an investigation concerning violations of the Act or fraud on the shareholders.' " (*Hanna v. WCI Communities, Inc., supra,* 348 F.Supp.2d at p. 1325 (*Hanna*).) The *Hanna* court explained that the Sarbanes-Oxley Act of 2002 "specifically mandates" that where a claimant alleges discharge or other discrimination under the Act, and " 'the Secretary has not issued a final decision within 180 days of the filing of the [administrative] complaint and there is no showing that such delay is due to the bad faith of the claimant,' " the claimant may bring an action " 'for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.' " (*Hanna,* at pp. 1325–1326, italics & boldface omitted, quoting 18 U.S.C. § 1514A(b)(1)(B).) The court then observed, "it is undisputed that [the Secretary] issued [the] preliminary findings 199 days after Mr. Hanna filed his administrative complaint." (*Hanna,* at p. 1326.)

In short, rejection of principles of collateral estoppel and judicial exhaustion was *not* the basis for the *Hanna* court's denial of the defendants' motion to dismiss the claimant's subsequent federal court action. Rather, the court expressly held, as a matter of law, that the plain language of the Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1514A(b)(1)(B)) authorized the claimant to bring his securities retaliation action in federal district court because of a procedural irregularity in the prior administrative proceeding; the Secretary had failed to issue the agency's final decision within 180 days of the filing of the administrative complaint, as required under that particular whistleblower statute. (*Hanna, supra,* 348 F.Supp.2d at p. 1328.) Indeed, the court carefully explained that "defendants' reliance on [*Fadaie*] is inapposite to the circumstances of this case. *Fadaie* addresses the failure to exhaust administrative remedies in the context of filing a claim under [the AIR 21]. . . . While it is true that the Sarbanes-Oxley Act uses the same administrative procedures as [the AIR 21], . . . it is fundamentally different in that [the AIR 21] allows plaintiffs to 'file [their] whistleblower claims directly in a court of law.' *Fadaie,* 293 F.Supp.2d at 1220. Thus, under [the AIR 21], a whistleblower plaintiff has the option of seeking either an administrative or a judicial remedy from the moment his claim arises. Consequently, the *Fadaie* court held that 'once plaintiff initiated the administrative process . . . the statute obligated him to complete the administrative process, such that the only avenues of relief available to him were a hearing before the ALJ and a direct appeal to the [relevant] Circuit.' " (*Hanna, supra,* 348 F.Supp.2d at p. 1330, citations omitted.) The *Hanna* court's brief comments, following this holding, on the application of the doctrine of issue preclusion to prior administrative findings under the Eleventh Circuit's case law were plainly dicta, and should not be read as undermining the rationale of *Fadaie,* an AIR 21 decision which the *Hanna* court itself carefully distinguished from the matter directly before it.

important procedural protection against a potentially erroneous determination and is a factor to consider in determining whether collateral estoppel applies. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 [88 Cal.Rptr.2d 366, 982 P.2d 229]; see also Rest.2d Judgments, § 28(1), p. 273 [issue preclusion will not apply if the party to be precluded could not, as a matter of law, obtain review].) As noted, the AIR 21 statutory scheme gave Murray the right to a formal de novo hearing of record before an ALJ, and further gave him the right to appeal the Secretary's order to the appropriate United States Court of Appeals in accordance with the Administrative Procedure Act. (§ 42121(b)(4)(A)–(B).)[7] The statute further expressly reflects Congress's intent that "[a]n order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding." (§ 42121(b)(4)(B).)

■ This court's decision in *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*) explains that unless a party to "a quasi-judicial administrative agency proceeding" exhausts available judicial remedies to challenge the adverse findings made in that proceeding, those findings may be binding in later civil actions. (*Id.* at p. 65.)

In *Johnson*, an assistant city manager was dismissed and challenged his dismissal on discrimination grounds through the city's administrative grievance procedure. The administrative adjudication resulted in findings that the dismissal was for economic reasons and not the product of unlawful discrimination. The employee then filed a discrimination complaint under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA), received a right-to-sue letter, and filed suit under the FEHA challenging the actions of the personnel board and the city council. The trial court granted summary judgment, finding the FEHA discrimination claim failed because the employee was bound by the city's administrative findings. (*Johnson, supra,* 24 Cal.4th at pp. 65–67.) The Court of Appeal held that the employee's failure to timely challenge the administrative finding by the city that his dismissal was for economic reasons barred his FEHA cause of action alleging that his termination was for discriminatory reasons. (*Johnson,* at p. 67.)

---

[7] "After the ALJ issues a ruling, a party has 10 days to file a petition for review with the Department of Labor's Administrative Review Board. *See* 29 C.F.R. § 1979.110(a). At its discretion, the Administrative Review Board may accept a case for review and issue a superseding final order; otherwise, the ALJ's ruling becomes the final order of the Secretary of Labor. *See* § 42121(b)(3)(A). Judicial review of such final orders may exclusively be had in the appropriate United States Court of Appeals in accordance with the Administrative Procedure Act. *See* § 42121(b)(4)(A)–(B); 5 U.S.C. ch. 7." (*Murray v. Alaska, supra,* 522 F.3d at p. 923, fn. 4.)

We affirmed the judgment in *Johnson* with respect to the FEHA cause of action, explaining that the city's "administrative process provides internal remedies" and that the employee had "fail[ed] to obtain the requisite judicial review of [the] adverse administrative finding." (*Johnson, supra*, 24 Cal.4th at p. 72.) We concluded on the particular procedural facts of the case that "when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA." (*Id.* at p. 76.) Although *Johnson* involved the claims of a public employee, we find that a distinction of little difference here. The Ninth Circuit's cases are also in accord. (See, e.g., *Eilrich v. Remas* (9th Cir. 1988) 839 F.2d 630, 632, quoting *Plaine v. McCabe* (9th Cir. 1986) 797 F.2d 713, 719, fn. 12 [" 'If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal."].)

█ We conclude that under the particular facts and procedural posture of this case, Murray may be precluded from relitigating the factual issue of causation against Alaska in his state court wrongful termination action, removed to federal court on grounds of diversity jurisdiction. Although, without doubt, Murray's claims would have been more fully litigated in the prior AIR 21 administrative proceeding had he invoked his right to a formal hearing before an ALJ, he never did so. Under California law, however, the dispositive issue of causation was nonetheless "actually litigated" (*Sims, supra*, 32 Cal.3d at p. 484) in the administrative proceeding once the matter was " 'properly raised' " by Murray's AIR 21 complaint, along with his written statements and other supporting documentation, and then " 'determined' " by the Secretary in her written findings and order. (*Sims, supra*, 32 Cal.3d at p. 484.) Moreover, Murray's "fail[ure] to obtain the requisite judicial review of [the] adverse administrative finding" available to him under the "internal remedies" provided by the AIR21 whistleblower statute further supports our conclusion that the Secretary's adverse finding on causation, embodied in a final order, may be afforded preclusive effect. (*Johnson, supra*, 24 Cal.4th at p. 72.)[8]

---

[8] Our recent decision in *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963 [89 Cal.Rptr.3d 576, 201 P.3d 457] does not dictate a different conclusion here. In that matter, we considered whether the State Personnel Board's adverse finding on a whistleblower-retaliation claim should be given preclusive effect in the employee's subsequent court action based on California's whistleblower-protection statute (see Gov. Code, § 8547.8), notwithstanding that the employee had failed to exhaust available administrative and judicial remedies. Citing *Johnson, supra*, 24 Cal.4th at page 76, we acknowledged the general rule that "writ review of an adverse administrative decision is a necessary step before pursuing other remedies that might be available," and that "if a litigant fails to take this step, and if the administrative proceeding possessed the requisite judicial character (see [*Pacific Lumber*], *supra*, 37 Cal.4th at p. 944), the administrative decision is binding in a later civil action

We recognize that Murray's initiation of the AIR 21's administrative complaint procedure was voluntary and optional (§ 42121(b)(1)), and not a prerequisite to filing this state court retaliation-wrongful termination action. But Murray, represented by counsel at all times, surely appreciated that when he instituted the administrative proceeding against his former employer, Alaska, it would have to retain counsel and defend the action. He was on statutory notice that, if unsatisfied with the Secretary's findings, he could request a formal hearing de novo before an ALJ at which he would be afforded the full panoply of trial rights and protections; that he could then seek discretionary review of any adverse decision with the Department of Labor's administrative review board; and ultimately, that he could appeal any adverse decision to the Ninth Circuit. Both Murray and his attorney were on further notice that, under applicable agency regulations, if he wanted to withdraw his complaint he could do so only by filing a formal written withdrawal with the Assistant United States Secretary of Labor, who would then have to approve the withdrawal. (29 C.F.R. § 1979.111(a) (2010).) Yet Murray never requested a formal hearing, never exercised his rights of appeal, and never attempted to formally withdraw his complaint, even though the statute placed him on notice that, if he took no action, the Secretary's findings and decision would become a final nonappealable order by operation of law. (§ 42121(b)(2)(A).)

 Once Murray failed to exercise his rights to a formal hearing and judicial review, the Secretary's investigative findings became "a final order . . . not subject to judicial review." (§ 42121(b)(2)(A).) Where Congress evinces a clear intent to preclude judicial review of final administrative decisions, a failure to properly appeal a final order must be given preclusive effect. (See *Tice v. Bristol-Myers Squibb Co.* (W.D.Pa. 2007) 515 F.Supp.2d

brought in superior court." (*State Bd. of Chiropractic Examiners v. Superior Court, supra*, at pp. 975–976.) But we went on to explain that *Johnson* was distinguishable from the matter there before us, because "[h]ere . . . we have specific statutory language suggesting that adverse findings by the State Personnel Board are *not* binding in a [subsequent Government Code] section 8547.8[, subdivision (c)] damages action . . . ." (*State Bd. of Chiropractic Examiners v. Superior Court*, at p. 976.) We explained further that "the Legislature expressly authorized a damages action in superior court for whistleblower retaliation [citation], and in doing so it expressly acknowledged the existence of the parallel administrative remedy. It did not require that the board's findings be set aside by way of a mandate action; rather, it gave as the only precondition to the damages action authorized in [Government Code] section 8547.8[, subdivision (c)], that a complaint be filed with the board and that the board 'issue[], or fail[] to issue, findings.' (*Ibid.*) The bareness of this statutory language suggests that the Legislature did not intend the State Personnel Board's findings to have a preclusive effect against the complaining employee." (*State Bd. of Chiropractic Examiners v. Superior Court*, at p. 976.)

Here, in contrast to *State Bd. of Chiropractic Examiners v. Superior Court*, there is no language in the AIR 21 statute suggesting Congress intended that conclusive findings made by the Secretary in a final nonappealable order should not have preclusive effect in a subsequent state court action.

580, 584 [plaintiff collaterally estopped from relitigating factual issues resolved by ALJ where his failure to appeal ALJ's decision dismissing administrative whistleblower complaint under Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1514A) resulted in final order].) California law is in accord.

 Last, "[e]ven assuming all the threshold requirements are satisfied . . . [w]e have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343 [272 Cal.Rptr. 767, 795 P.2d 1223].) We find that the public policies underlying the doctrine of collateral estoppel will best be served by applying the doctrine to the particular factual setting of this case. Those policies include conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation. (*Allen v. McCurry* (1980) 449 U.S. 90, 94 [66 L.Ed.2d 308, 101 S.Ct. 411]; *Montana v. United States* (1979) 440 U.S. 147, 153–154 [59 L.Ed.2d 210, 99 S.Ct. 970]; *Sims, supra,* 32 Cal.3d at pp. 488–489; *Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 878 [128 Cal.Rptr.2d 808].)

Considerations of comity and federalism further support application of the doctrine of collateral estoppel in this case. The AIR 21 whistleblower statute offers complainants strong incentives to invoke the administrative remedies as an alternative to a court action. If the Secretary finds a statutory violation, she must provide relief that includes immediate reinstatement with backpay and other compensatory damages. (§ 42121(b)(3)(B).) By choosing to proceed under the AIR 21's federal administrative whistleblower protection scheme, Murray availed himself of these distinct advantages. To allow him to relitigate the factual issue of causation decided against him in the Secretary's final nonappealable order in this subsequent court action between the same parties would reduce the AIR 21 statutory scheme to a mere "rehearsal[] for litigation" (*Johnson, supra,* 24 Cal.4th at p. 72) should the complainant not prevail.

## Conclusion

Given the factual and procedural circumstances of this case as reported in the Ninth Circuit's published order, we conclude the Secretary's factual findings on the issue of causation, embodied in a final nonappealable order, should, under California law, be afforded preclusive effect in this subsequent court action between the same parties.

Chin, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Dissenting.—Kevin Murray alleges he was wrongfully discharged by Alaska Airlines, Inc. (Alaska). In the course of the investigation of his administrative complaint, he received no hearing. He was not contacted to provide evidence. He was not permitted to confront the witnesses against him, to review the evidence submitted by Alaska, or to make oral or written arguments before findings were made. No testimony was submitted under oath and no record was prepared. (See *Murray v. Alaska Airlines, Inc.* (9th Cir. 2008) 522 F.3d 920, 921.) The majority holds that after such an investigation, Murray may be collaterally estopped based on the resulting administrative findings, and forever barred from seeking redress, because he failed to appeal those findings and have them set aside. I respectfully dissent.

I

Murray, a quality assurance auditor for Alaska, brought safety concerns about Alaska's operations to the attention of the Federal Aviation Administration. An investigation revealed " 'significant discrepancies relating to air carrier safety.' " (*Murray v. Alaska Airlines, Inc., supra,* 522 F.3d at p. 921.) Subsequently, Murray's position was outsourced, and he was unable to find another job with Alaska. Although not required to do so, Murray voluntarily filed a federal administrative complaint with the United States Department of Labor,[1] contending that Alaska's adverse actions were in retaliation for his protected whistleblower activity. (See 49 U.S.C. § 42121(b).)

In the ensuing investigation, "Alaska submitted a written response to Murray's complaint, produced relevant documentation and offered witness testimony." (*Murray v. Alaska Airlines, Inc., supra,* 522 F.3d at p. 921.) The investigation's treatment of Murray was in marked contrast: "Murray was never contacted by the Secretary [of Labor]'s investigator. He was not given a copy of the documents provided by Alaska or its witness statements. Nor did he have an opportunity to submit additional information to the Secretary, or respond to Alaska's arguments, before the Secretary rendered her findings." (*Ibid.*) Unsurprisingly, given these procedures, the Secretary of Labor, acting through her agent, a regional administrator for the Occupational Health and Safety Administration, issued findings in favor of Alaska: while Murray had engaged in protected activity and suffered an adverse employment action, the Secretary concluded there was no connection between the two.

Rather than appeal the adverse decision and seek an administrative hearing, Murray filed suit, alleging wrongful termination and retaliation for whistleblowing in violation of public policy. (See Lab. Code, § 1102.5, subd. (b);

---

[1] There was no statutory exhaustion requirement that obligated him to pursue an administrative remedy. (See *Murray v. Alaska Airlines, Inc., supra,* 522 F.3d at p. 921; 49 U.S.C. § 42121(b)(1).)

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330].) The question here is whether the administrative findings, rendered without the benefit of a hearing or even consultation with Murray, are entitled to issue preclusive effect so as to bar Murray's suit.

That administrative findings may give rise to issue preclusion is of course long settled. (See *United States v. Utah Constr. Co.* (1966) 384 U.S. 394, 419–422 [16 L.Ed.2d 642, 86 S.Ct. 1545]; *People v. Sims* (1982) 32 Cal.3d 468, 479 [186 Cal.Rptr. 77, 651 P.2d 321].) However, before an administrative finding may operate as a bar to judicial relief, a court must assure itself that the proceeding giving rise to it had a sufficiently "judicial character." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 113 [84 Cal.Rptr.3d 734, 194 P.3d 1026]; *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944 [38 Cal.Rptr.3d 220, 126 P.3d 1040] (*Pacific Lumber Co.*); see *Sims*, at pp. 479–480.) "Indicia of [administrative] proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (*Pacific Lumber Co.*, at p. 944.)

Comparing the features that demonstrate an administrative proceeding's judicial character with the prefinding procedures afforded here leads ineluctably to the conclusion the administrative findings in this case are not entitled to preclusive effect. Testimony was not taken "under oath or affirmation" (*Pacific Lumber Co., supra*, 37 Cal.4th at p. 944); Murray had no "ability to subpoena, call, examine, and cross-examine witnesses" (*ibid.*); he had no opportunity "to introduce documentary evidence" (*ibid.*); he had no opportunity "to make oral and written argument" (*ibid.*); and there was no "taking of a record of the proceeding" (*ibid.*), for indeed there was no hearing at all. There were, it is true, written findings, but that alone is manifestly insufficient to support collateral estoppel. (See, e.g., *McDonald v. Antelope Valley Community College Dist., supra*, 45 Cal.4th at pp. 113–114.) Indeed, I do not read the majority opinion as disputing that the proceedings Murray actually received do not come close to satisfying the judicial character requirement. For purposes of whether estoppel applies, that should be the end of the matter.

II

The majority reaches a contrary conclusion by attending not to the proceedings that actually preceded the administrative findings, but to those

that could have occurred, but did not, *after* the findings were made. We have never done so before; indeed, we have previously dismissed as unsupported by authority a similar argument to the one now embraced by the majority. In *Pacific Lumber Co.*, we expressly declared: "For an administrative decision to have collateral estoppel effect, it and its *prior* proceedings must possess a judicial character." (*Pacific Lumber Co., supra*, 37 Cal.4th at p. 944, italics added.) We there considered the proceedings leading up to the Department of Forestry and Fire Protection's approval of a timber harvesting plan for land subsequently acquired by Scotia Pacific Company LLC and Pacific Lumber Company, a plan that did not call for water quality monitoring, and concluded those prior proceedings were of an insufficiently judicial character to bar a regional water board from thereafter mandating such monitoring. (*Id.* at pp. 944–945.)

The lumber companies had argued that in assessing the judicial character of the department of forestry's decision, we should take into account the appeal procedures available to the water board. (*Pacific Lumber Co., supra*, 37 Cal.4th at p. 945, fn. 13; see Pub. Resources Code, § 4582.9.) We declined to accept the argument, noting a complete absence of authority for the proposition that postfinding appeal proceedings that could have been, but were not, pursued could rescue prefinding proceedings otherwise lacking in judicial character. (*Pacific Lumber Co.*, at p. 945, fn. 13.)

*Pacific Lumber Co.* is no anomaly; to the contrary, existing precedent entirely justified its pronouncement that the assessment of an administrative decision's judicial character depends upon the "prior proceedings" leading up to the decision. (*Pacific Lumber Co., supra*, 37 Cal.4th at p. 944.) The United States Supreme Court approved administrative collateral estoppel in *United States v. Utah Constr. Co., supra*, 384 U.S. 394. Both that case and every case the high court relied on for recognition of administrative estoppel involved prefinding proceedings that justified the imposition of estoppel. (See *id.* at p. 422 [findings entered after a party "had a full and fair opportunity to argue their version of the facts" at an evidentiary hearing]; *Sunshine Coal Co. v. Adkins* (1940) 310 U.S. 381, 390–391 [84 L.Ed. 1263, 60 S.Ct. 907] [findings followed a public hearing, taking of evidence, and oral argument]; *Fairmont Aluminum Co. v. Commissioner of Internal Revenue* (4th Cir. 1955) 222 F.2d 622, 625 [taxpayer had an opportunity to submit evidence before findings were issued]; *Seatrain Lines v. Pennsylvania R. Co.* (3d Cir. 1953) 207 F.2d 255, 258–259 [findings followed hearings and argument from both sides]; *Goldstein v. Doft* (S.D.N.Y. 1964) 236 F.Supp. 730, 732 [findings followed hearings and written argument], affd. *per curiam* (2d Cir. 1965) 353 F.2d 484.)

We embraced the *Utah Construction* rule in *People v. Sims, supra*, 32 Cal.3d 468. In *Sims* and every published state case since, including every

case the majority relies on, courts have applied issue preclusion only after determining the *prefinding* proceedings were of a sufficiently judicial character to warrant it. (See, e.g., *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 71 & fn. 3 [99 Cal.Rptr.2d 316, 5 P.3d 874] [estoppel based on findings made after an evidentiary hearing with live testimony]; *Sims*, at pp. 479–480 [estoppel based on findings made after a full evidentiary hearing with the opportunity to subpoena, call, and cross-examine witnesses]; *Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135, 1142 [20 Cal.Rptr.3d 598] [issue preclusion based on a comprehensive decision issued after a three-day adversarial evidentiary hearing]; *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 [111 Cal.Rptr.2d 870] [estopped party "had ample opportunity to raise issues and present evidence" at a full evidentiary hearing]; *Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1179 [260 Cal.Rptr. 76] [estopped party was "afforded a full hearing to present evidence under oath or affirmation"]; *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464, 1470 & fn. 5 [249 Cal.Rptr. 578] [barred party was afforded full hearing with a right of discovery].)[2]

Similarly, those decisions that have declined to find a basis for preclusion have likewise considered the character of the prefinding procedures. (See, e.g., *McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at pp. 113–114 [no basis for requiring judicial exhaustion where the administrative decision was not based on a hearing and the plaintiff had no opportunity to call witnesses or present evidence]; *Pacific Lumber Co.*, *supra*, 37 Cal.4th at pp. 944–945 [rejecting estoppel and finding no basis for considering an unpursued postdecision appeal]; *Ahmadi-Kashani v. Regents of University of California* (2008) 159 Cal.App.4th 449, 458 [71 Cal.Rptr.3d 556] [no basis for estoppel where the plaintiff "was afforded no hearing at all, let alone a 'quasi-judicial' one, prior to abandoning her grievance process"]; *id.* at pp. 458–460.) In short, we have always insisted on certain minimum *prefinding* procedures.

The reason for demanding that prefinding proceedings have a judicial character is clear. One of the core values of our judicial system is accuracy in decisionmaking. (E.g., *Tehan v. Shott* (1966) 382 U.S. 406, 416 [15 L.Ed.2d 453, 86 S.Ct. 459] [the "basic purpose of a trial is the determination of truth"].) Many if not most of our rules for court proceedings have as a central

---

[2] The majority emphasizes language in these cases that explains that issue preclusion depends in part on whether there was an " 'opportunity to litigate' " an issue, rather than on whether the estopped party actually litigated the issue. (Maj. opn., *ante*, at pp. 869–874.) But what the majority ignores is the context: in each and every one of the cases relied upon, the opportunity to litigate was afforded *before* the decision being given preclusive effect was reached. Thus, as noted above, each case involved a full hearing and a party's decision, at that full hearing, not to step forward with better evidence.

purpose the promotion of accuracy. Consequently, cases dating to the inception of the administrative collateral estoppel doctrine have always considered the judicial character of the proceedings that actually transpired before findings were rendered. Where the litigant was given an opportunity to present his or her best case before the administrative findings were issued, we can have faith in the findings reached thereafter. Here, in contrast, we have no reason to have faith in the accuracy or fairness of the findings, nor, consequently, do we have any justification for placing our imprimatur on them and according the findings preclusive effect.

We have in the past identified the availability of postfinding review as an additional necessary factor in determining whether to permit issue preclusion (see *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 [88 Cal.Rptr.2d 366, 982 P.2d 229]; maj. opn., *ante*, at pp. 875–876); never, until today, has the availability of a postfinding appeal been treated as a sufficient condition for imposition of estoppel. In short, no California case has allowed what the majority countenances here—issue preclusion for findings rendered without any prior opportunity for a hearing, the submission of evidence, the confrontation of witnesses, or the presentation of argument.[3]

## III

Explicit or implicit in the majority opinion are three rationales for why we should disregard past precedent and place our faith in administrative findings rendered in such a nonjudicial fashion: Murray acquiesced in the findings; he was obligated to exhaust the title 49 United States Code section 42121 procedure once he invoked it; and federalism and comity considerations warrant according such findings effect. None has merit.

Running through the majority opinion is the implication that Murray knew, or should have known, that failing to seek a full hearing before an administrative law judge would result in his forfeiture of any remedies—in essence, that he was on notice he must appeal or face a bar, and that by failing to

---

[3] The majority relies on a federal district court case, *Fadaie v. Alaska Airlines, Inc.* (W.D.Wn. 2003) 293 F.Supp.2d 1210, for the opposite view. As *Fadaie* was decided under Washington law (see *id.* at p. 1219, fn. 3), it has limited relevance here. Moreover, *Fadaie*'s conclusions have been rejected by a more recent district court case considering the same question we face—whether a title 49 United States Code section 42121 investigation alone, without a hearing, is a worthy basis for collateral estoppel—and concluding, as I would, that it is not. (See *Hanna v. WCI Communities, Inc.* (S.D.Fla. 2004) 348 F.Supp.2d 1322, 1330–1331.) The majority attempts at exhaustive length to paint *Hanna*'s discussion of collateral estoppel as dicta. (Maj. opn., *ante*, at p. 875, fn. 6.) While I disagree with this characterization, it matters little; the views of a lone federal trial judge in *Fadaie* on an estoppel question under Washington law, which have been disagreed with elsewhere in holding or dicta, simply cannot sustain the majority's conclusion against the mass of contrary authority under California law.

appeal he acquiesced in the investigative findings. (See maj. opn., *ante*, at pp. 868, 877–879.) The regional administrator's findings letter certainly put Murray on notice that he would relinquish *federal* remedies unless he took further action.[4] But the administrative proceedings were voluntary; exhaustion of them was, for state purposes, not mandatory. Murray rationally could have elected to forgo his federal remedies after receiving the initial regional administrator letter, deciding to focus his energies on seeking state relief instead. Nothing in his actions can be interpreted as acquiescence, i.e., as a concession that he lacked any evidence supporting contrary findings, such as might elevate our faith in the accuracy of the preliminary findings.[5] Nor would anything in the letter, or in any of our prior decisions, have alerted Murray or his counsel that failing to act would subject him to a bar and a sacrifice of his independent, parallel state remedies. Fairness is a necessary precondition to the application of estoppel (see *Vandenberg v. Superior Court*, *supra*, 21 Cal.4th at p. 835; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343 [272 Cal.Rptr. 767, 795 P.2d 1223]); in the absence of foreseeability, application of a bar here is profoundly inequitable.[6]

In a related vein, the majority suggests Murray can be fairly barred from proceeding because he failed to exhaust available remedies. (E.g., maj. opn., *ante*, at pp. 868–869, 876–878.) But this rationale depends on a substantial

---

[4] It is in this sense that failure to act would render the preliminary findings final. Finality is a necessary, but not a sufficient, condition for imposition of issue preclusion. (See *Vandenberg v. Superior Court*, *supra*, 21 Cal.4th at p. 835; *Sanderson v. Niemann* (1941) 17 Cal.2d 563, 573–575 [110 P.2d 1025]; Rest.2d Judgments, § 13.) The majority's attempt to make more of the findings' finality, suggesting that so long as a decision is final it "must be given preclusive effect" (maj. opn., *ante*, at p. 878), is without any semblance of support. Decisions may have preclusive effect if they are final *and* the proceedings leading up to them were sufficiently judicial in character. (*Pacific Lumber Co.*, *supra*, 37 Cal.4th at p. 944.) The case the majority relies upon, *Tice v. Bristol-Myers Squibb Co.* (W.D.Pa. 2007) 515 F.Supp.2d 580, says no more than that.

[5] The majority chides Murray for failing formally to seek approval to withdraw his complaint, as if that failure adds weight to the investigative findings. (Maj. opn., *ante*, at pp. 868, 878; 29 C.F.R. § 1979.111(a) (2010).) However, the approval requirement was inserted to *benefit* complainants, as a way of protecting against coercion. (See 68 Fed.Reg. 14100, 14106 (Mar. 21, 2003) [the regulations permit "a complainant to freely withdraw his or her complaint without prejudice. . . . The purpose of the Assistant Secretary's approval is to help ensure that the complainant's withdrawal is, indeed, made freely without threat of coercion or unlawful promise"].) To turn such a protection into the basis for a quasi-exhaustion requirement is unwarranted and unsound.

[6] Numerous courts and commentators have recognized the significance of foreseeability in deciding whether the application of preclusion in a given case is appropriate. (See, e.g., *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 330 [58 L.Ed.2d 552, 99 S.Ct. 645]; *The Evergreens v. Nunan* (2d Cir. 1944) 141 F.2d 927, 929 (opn. of Hand, J.); see also Levine, *Preclusion Confusion: A Call for Per Se Rules Preventing the Application of Collateral Estoppel to Findings Made in Nontraditional Litigation*, 1999 Ann. Surv. Am. L. 435 [discussing ways in which the unforeseeable application of preclusion undermines the policies justifying it]; Note, *For One Litigant's Sole Relief: Unforeseeable Preclusion and the Second*

expansion of the previously marked bounds of judicial exhaustion. Judicial exhaustion is simply a logical corollary of collateral estoppel principles: if an administrative decision is rendered, then, "provided that decision is of a sufficiently judicial character to support collateral estoppel" (*McDonald v. Antelope Valley Community College Dist., supra,* 45 Cal.4th at p. 113), the losing party must exhaust available avenues for reversing the decision or be bound by the underlying findings. The proviso—that judicial character is a necessary precondition to trigger any obligation to exhaust—has until today been crucial. (See *Ahmadi-Kashani v. Regents of University of California, supra,* 159 Cal.App.4th at pp. 460–461 [in the absence of a " 'quasi-judicial' " hearing, the plaintiff was free to abandon an internal grievance process and pursue her claim in court without exhausting any internal remedies].)

Now, through legerdemain, this precondition has been erased. The procedures Murray actually was afforded lacked even minimal judicial character; under extant precedent, he should have been under no obligation to exhaust further administrative remedies. Instead, the majority reasons (with a certain circularity) that if a party has the right to appeal (but fails to do so), the findings will achieve a judicial character, and if the findings achieve a judicial character, the party is required to pursue an appeal. The right of appeal in title 49 United State Code section 42121 proceedings is thus employed to serve a remarkable double duty, both to mandate its own exercise by transforming into having judicial character findings wholly lacking in such, and then, by its mere availability, to bar the pursuit of all other avenues of relief.[7]

As a policy matter, the likely consequence of the majority's novel rule is that parties in the future will be more cautious in initiating available

---

*Restatement* (1992) 77 Cornell L.Rev. 905, 923 ["A court that invokes preclusion in an unforeseeable manner cannot legitimately dismiss the precluded party's complaints by repeating the old slogan that '[t]he predicament in which [he] finds himself is of his own making.' "].)

The need for foreseeability is especially keen in the administrative context, where uncertainty over the application of estoppel will be greater and may significantly impact how parties elect to proceed. The fairness of imposing preclusion in such a context should hinge in part on whether the parties could have foreseen the significance of an issue for later proceedings. (See *Bowen v. U.S.* (7th Cir. 1978) 570 F.2d 1311, 1322; see also Note, *Collateral Estoppel Effects of Administrative Agency Determinations: Where Should Federal Courts Draw the Line?* (1988) 73 Cornell L.Rev. 817, 826.) Here of course, given the paucity of prior authority, Murray had no basis to foresee the preliminary administrative findings would have any bearing on his state rights; the imposition of estoppel is thus especially unjust.

[7] The majority relies for support on *Johnson v. City of Loma Linda, supra,* 24 Cal.4th 61, but *Johnson* did not purport to require exhaustion of judicial avenues for overturning administrative findings except insofar as those findings were the product of quasi-judicial proceedings. (See *McDonald v. Antelope Valley Community College Dist., supra,* 45 Cal.4th at p. 114 [citing and distinguishing *Johnson* because it involved a full opportunity to litigate at an evidentiary hearing]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1090 [6

voluntary proceedings, with the inevitable result that fewer grievances will be resolved informally. Instead, lawsuits will be filed at the outset, thus increasing the burdens on the court system. (See *Ahmadi-Kashani v. Regents of University of California*, *supra*, 159 Cal.App.4th at p. 459.)

As its final justification, the majority invokes "[c]onsiderations of comity and federalism" (maj. opn., *ante*, at p. 879), but neither has any bearing here. Insofar as federalism is concerned, Congress could have, but did not, preempt parallel state remedies when it adopted a federal whistleblower administrative remedy. (See *Gary v. Air Group, Inc.* (3d Cir. 2005) 397 F.3d 183, 190; *Branche v. Airtran Airways, Inc.* (11th Cir. 2003) 342 F.3d 1248, 1261–1264.) Nothing offends federalism principles in permitting an unpreempted parallel state proceeding to go forward.

Nor is comity a concern. Notably, the majority accords the results of the administrative investigation a weight it is not clear the Department of Labor or the federal courts would grant them. In *Hanna v. WCI Communities, Inc.*, *supra*, 348 F.Supp.2d 1322, the court considered whether preliminary findings issued in response to a title 49 United States Code section 42121 complaint should be accorded collateral estoppel effect.[8] The court pointed out that, in a proceeding brought under section 42121, "the [Department of Labor]'s own regulations state that res judicata or collateral estoppel treatment is only appropriate when 'a complainant brings a new action in Federal court following extensive litigation before the Department that has resulted in a *decision by an administrative law judge or the Secretary.*' 68 [Fed.Reg.] § 31860, 31863 (2003)." (*Hanna*, at p. 1331.) There, as here, no decision had been issued by either an administrative law judge or the review board responsible for issuing final decisions in the Secretary of Labor's name;

---

Cal.Rptr.3d 457, 79 P.3d 569] [explaining that *Johnson* held administrative findings binding only when a party had "received an adverse quasi-judicial finding" and thereafter failed to set it aside].)

The majority today does precisely what I cautioned against in *Johnson*: imposes a collateral estoppel bar for neglecting to seek review of an adverse administrative decision without regard to whether the specific decision satisfied all the requirements for issue preclusion so as to trigger an exhaustion requirement. (See *Johnson v. City of Loma Linda*, *supra*, 24 Cal.4th at p. 81 (conc. opn. of Werdegar, J.); see also *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 975 [89 Cal.Rptr.3d 576, 201 P.3d 457].)

[8] *Hanna* arose under a whistleblowers' protection provision of the Sarbanes-Oxley Act of 2002 (see 18 U.S.C. § 1514A) that borrows the procedures of 49 U.S.C. section 42121 for its effectuation. (18 U.S.C. § 1514A(b)(2)(A).) As the majority necessarily recognizes in relying on *Tice v. Bristol-Meyers Squibb Co.*, *supra*, 515 F.Supp.2d 580, another Sarbanes-Oxley case, cases arising under other statutory schemes that use section 42121's procedures may be fully relevant, at least insofar as they address the effect of section 42121 proceedings rather than any substantive aspects of the underlying claims.

accordingly, findings based only on an investigation and not a " 'trial-court like hearing' " were an insufficient basis for collateral estoppel. (*Ibid.*) I see no warrant for according the Department of Labor's informal investigation a status equal to that of a fully litigated trial or administrative hearing when neither the Department nor the federal courts would uniformly do so.

IV

Application of collateral estoppel depends not only on whether the strict requirements for estoppel have been satisfied, but also on whether the core public policies underlying it—"preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation"—support its invocation. (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 343; see also *Vandenberg v. Superior Court, supra,* 21 Cal.4th at p. 829; *People v. Sims, supra,* 32 Cal.3d at p. 483.) As well, we have cautioned that preclusion in the administrative context must be applied more flexibly than where the prior decision was judicial. (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290–1291 [265 Cal.Rptr. 162, 783 P.2d 749].)[9]

Here, no loss of judicial integrity would ensue were estoppel denied, because the prior findings were issued in a nonjudicial forum; thus no risk of inconsistent judicial outcomes is present. (See *Vandenberg v. Superior Court, supra,* 21 Cal.4th at p. 833.)[10] Second, judicial economy is not an issue because the original proceeding involved no expenditure of judicial resources. (See *Vandenberg,* at p. 833.) Third, if the possibility of a whistleblower pursuing both federal and state remedies were deemed vexatious, Congress could have seen fit to preempt state remedies. It did not.

In the end, the majority turns its back on precedent, imposing collateral estoppel as a form of sanction for failing to exhaust that which, as an initial matter, was never required to be exhausted. Collateral estoppel should not be

---

[9] This flexibility is an outlet to ensure that preclusion is not imposed in unpredictable and unforeseeable circumstances. (See, e.g., Heiser, *California's Confusing Collateral Estoppel (Issue Preclusion) Doctrine* (1998) 35 San Diego L.Rev. 509, 531–532; Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation* (1977) 46 Geo. Wash. L.Rev. 65, 83–84 ["When according estoppel effect to agency findings would foster harsh, unforeseeable effects, the court should invoke the judicially recognized principle of applying collateral estoppel flexibly to avoid injustice."].)

[10] Moreover, the United States Supreme Court has made clear that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." (*Montana v. United States* (1979) 440 U.S. 147, 164, fn. 11 [59 L.Ed.2d 210, 99 S.Ct. 970].) The one-sided investigation in this case certainly offers reason for such doubt.

about punishment, but about the reliability of the administrative findings we substitute for a full and fair judicial hearing, appropriate if and only if we have faith in the processes that produced those findings. As such faith is unwarranted here, I respectfully dissent.

George, C. J., and Kennard, J., concurred.